Mr. Justice DAVIS
 

 delivered the opinion of the court.
 

 It is contended on behalf of the appellants that the twelfth section of the act of 1852, provides for the whole subject of the taxation of the road, that it exempts the road from all taxes except State taxes, and furnishes the only rule and authority by which these taxes can be ascertained and collected.
 

 
 *226
 
 It was held by this court, in the case of
 
 The Pacific Railroad
 
 v. Magwire,
 
 *
 
 that this section created a contract between the State and the railroad company, exempting the road from taxation until it was completed, and for two years thereafter if it did not pay a dividend before the expiration of these two years.
 

 The inquiry is whether this contract goes further and exempts the road, after it has been completed for two years, from all other than State taxation, and whether the State is precluded from providing another mode of valuation for State taxes.
 

 It is manifest that legislation, which it is claimed relieves any species of property from its due proportion of the general burdens of government, should be so clear that there can be neither reasonable doubt nor controversy about its terms. The power to tax rests upon necessity, and is inherent in every sovereignty, and there can be no presumption in favor of its relinquishment; While it wére better for the interest of the community that this power should on no occasion.be surrendered, this court has always held that the legislature of a State, unrestrained by constitutional limitation, has full control over the subject, and can make a contract with a corporation to exempt its property from taxation, either in perpetuity or for a limited period of time. If, however, on any fair construction of the legislation, there is a reasonable doubt whether the contract is made out, this doubt must be solved in favor of the State. In other words, the language used must be of such a character as, fairly interpreted, leaves no room for controversy.
 

 The present claim is of perpetual exemption from county and municipal taxation, quite as essential to the wants of the people as taxation for State purposes.
 

 It is conceded that this exemption is not granted in express terms, but it is argued that, taking the whole section together, it arises by necessary implication. We do not think so. Immunity from all taxation was given until the
 
 *227
 
 road was built aud iu operation two years, but after this it is declared “ that the road-bed, buildings, machinery, engines, cars, and other property of such completed road, at the actual cash value thereof, shall be subject to taxatiou at the rate assessed by the State on other real and personal property of like value.” This is a declaration that the taxation imposed upon the property of this company shall not be different from the taxatiou imposed upon other similar property, which conforms to the constitutional requirement, “ that all property subject to taxation shall be taxed in proportion to its value.” If other property is charged with the payment of county, school, and municipal'taxes, why not the property of this company? In no other way can the principle of equality in taxation, so essential to good government, be secured. If the legislature intended to apply a different rule in this case, it were easy to have said that the property of this company shall be subject to taxation “ for State purposes.” Instead of this it is declared to be “ subject to taxation.” This obviously means general taxation — such taxation as other property of like value is subjected to. No words of limitation arc used, and none can be implied against the interests of the State. It is never for the interest of the State to surrender the power of taxation, and an intention to do so will not be imputed to it unless the language employed leaves no other alternative.
 

 The motive for temporary exemption is apparent enough, because until the road was able to earn something taxation might bear heavily upon it. But with the completion of the road the reason for the exemption ceased, and it is difficult to see what inducement there was for the State to grant perpetual immunity from local taxatiou. In the original charter of the company, granted in 1849, there was uo exemption from taxation. It is true the amendment of 1851 altered this so that the road was relieved of any public charge or tax for the period of five years, but this privilege expired in 1856, and the provisions of the act of 1852 on this subject were more favorable to the company. Besides receiving under this act a large body of lands, donated by
 
 *228
 
 Congress to the State to aid in the construction of railroads, it was enabled to complete its entire road and run it for two years without paying any tax whatever. By this means it secured immunity from taxation until 1868, and any further immunity in this direction, if conceded by the State, would have been a mere gratuity. In view of all the legislation on this subject, it would seem quite clear that the General Assembly of Missouri, while recogniziug in behalf of this road the propriety of temporary exemption from taxation, had no purpose to continue these exemptions indefinitely.
 

 But it is said the section covers the whole subject of taxation, and as it provides for State taxes only it excludes any other. If in the declaratory part of it the road had been subject to “ State taxation,” there would have been plausibility in the argument, to say the least, that the legislature intended to waive other taxation. But the provision is that after the temporary exemption from all taxation ceases, by its own limitation, the property of the road shall be subject “ to taxation ” at the same rate as other property in the State. There is no restriction in this language, nor is there any rule of law by which a word can be imported to limit its meaning. It is true special provision is only made for the ascertainment and payment of a State tax, and nothing is said about the maimer of ascertaining and paying other taxes. But this does not prove an intentional abandonment of all but State taxes. It proves nothing more than that the legislature thought proper, in the particular of State taxes, to modify the general revenue law so far as this corporation is concerned, leaving the provisions of this general law operative upon local taxation.
 

 It would be a hard rule to apply to the legislation of a State to hold that the circumstance of making in the amendment to a charter of a railroad corporation special provision for ascertaining the tax due the State (nothing being said about the manner of ascertaining other taxes), works an exemption of the property of the corporation from all taxation not levied for State purposes. Silence on such a subject
 
 *229
 
 cannot be construed as a waiver of the right of the State in this regard. There must be something said which is broad enough.to show clearly that the legislature intended to relieve the corporation from a part of the burdens borne by other real and personal property. This was not done in this case, and the claim of exemption from local taxation cannot be sustained.
 

 It is claimed, however, that even if this be so the State is inhibited from altering the special provision on the subject of State taxation. This provision prescribes a mode for ascertaining the tax due the State. The president of the company is required to furnish to the auditor a statement, under oath, of the actual cash value of the property to be taxed, on which the company is directed to pay the tax due the State, within a certain time, to the treasurer, under penalties. And the claim is that the State legislature is prohibited from passing any law to assess the property of the company for taxation for State purposes in a different manner. It is not so written in the statute, nor, indeed, can any proper inference be drawn from what is written that the legislature intended to contract with the corporation in this particular. It would be strange indeed if it were so, for the mode of assessment might not work well, and yet, if it formed the subject of a contract, it could not be changed. The principal thing in which the State and company were interested was the actual cash value of the property to be charged. This value was the basis of taxation, and it could not be a matter of moment how it was fixed, provided it were done correctly. In this result both the State and corporation had an equal interest. Both were interested in the means adopted only so far as they were efficient to secure the contemplated object. The exigency of the State required the revenue on the basis of actual value, and this, it is to be presumed, the corporation was willing to accord. At any rate it was the duty of the State, in jusiiee to other property-owners, to use the appropriate means to ascertain this value. The ordinary method of doing this is by the instrumentality of officers appointed for
 
 *230
 
 the purpose, but the State asked the railroad, through its president, to make the valuation, to which the corporation assented. This way of reaching the result was less expensive to the State, but more expensive to the corporation than the usual mode in which taxes are assessed. The president of the company could not make a true valuation without the expenditure of time and labor, and this repeated, year by. year, as values of property constantly fluctuate. There is no presumption that he would not do it, conscientiously, according to his best judgment, but still it was a favor to the State for him to do it at all, and certainly no one can contend that a State cannot waive at any time a provision for its own benefit. Apart from this view of the subject, the provision in question was simply a mode for ascertaining the true value of the property to be taxed, and if, on trial, it should turn out not to be the best mode for the purpose, surely the legislature has a right to change it and adopt another. This no one will question, unless the legislature has surrendered its power over the subject by contract, which, in our opinion, has not been done in this case.
 

 But, until the legislature appoints another mode for assessing and collecting the revenue due the State from this corporation, it must proceed in conformity with the provisions contained in the act of 1852.
 

 The whole subject we have discussed recently came before the Supreme Court of Missouri in the case of
 
 The Pacific Railroad Company
 
 v.
 
 Cass County.
 
 . The assessor of Cass County had levied taxes for both State and county purposes on the property of the company in the county, and the question was whether these levies were authorized. The court held that the taxes for county purposes were rightfully assessed, under the general revenue laws, but that the taxes for State purposes were unauthorized, because section twelve of the act of 1852 had not been repealed either by an express provision of a subsequent'law or by necessary implication, and being in force, State taxes could only be collected in the way pointed out in that section.
 

 
 *231
 
 As it is the peculiar province of the highest court of a State to decide whether or not the method pursued in the assessment and collection of taxes is in conformity with the law of the State, this decision is controlling.
 

 It was not made until after this suit was instituted, and,, doubtless, not promulgated until the rendition of the decree. The assessors of St. Louis County, in this case, imposed taxes for State, county, school, and city purposes. The bill charged that the whole proceeding was illegal, and sought to restrain the entire levy. On demurrer the Circuit Court held that.the city taxes were wrongfully levied, and issued the proper order restraining them, and dismissed the bill so far as it related to State, county, and school taxes. The court should have included State taxes in the restraining order. On this account the decree must be reversed and cause remaudéd, with directions to enter an order enjoining the collection of the State tax in the bill mentioned. In all other respects the decree is right.
 

 Decree reversed and remanded.
 

 *
 

 20 Wallace, 36.