Mr. Justice Wylie
delivered the opinion of the court:
The object of the bill in this case, is to enjoin the District of Columbia from levying any tax upon the property of the railroad company within the District. The railroad company was incorporated by the State of Maryland on the 28th February, 1827, for the purpose of constructing and operating a railway from the city of Baltimore to the Ohio River. By the eighteenth section of the charter the shares in the company were to be deemed and considered personal estate, and *129 declared to be exempt from the imposition of any tax or burden by the States assenting to this law. By an act of Congress approved March 2, 1831, the Baltimore and Ohio Bail road Company was authorized to extend its road to the city of Washington, and “ to exercise the same powers, rights, and privileges, and shall be subject to the same restrictions, in the extension and construction of the said lateral railroad into and within the District,, as they [it] may exercise or are [is] subject to under aud by virtue of their [its] said charter or act of incorporation, in the extension aud construction of any railroad within the State of Maryland, aud shall be entitled to the same rights, compensation, benefits, aud immunities, in the use of said road, and in regard thereto, as are provided in said charter.”
On behalf of the company it is claimed that, by virtue of these two acts, the real estate of the company, being represented by its shares, is exempt from taxation, not only in the “ States assenting to this law,” but also in the State of Maryland and in the District of Columbia. A strict construction of this language of the charter would perhaps not exempt even the shares of the company from taxation in Maryland, whatever might he its effect in other States assenting to the law. When the charter was granted, it was’known that, in order to reach “ some suitable point on the Ohio Elver,” the-road must be constructed through the territory of other States,, as well as that of Maryland, which could be accomplished: only with their assent. Now, this language of exemption in its strict — if not indeed in its most natural — meaning applies-only to those States assenting. The State of Maryland “ enacted ” the charter; other States might assent to the construction of the road. The company might have been willing to intrust itself to its own parent in the matter of taxation, but have been anxious to secure iu advance protection from hostile legislation in other States through which it was necessary that the road should pass. If this be the proper construction, then Maryland did reserve to itself, in the charter of 1827, the power to tax even the shares of the company’s stock held *130 within her own jurisdiction, and consequently the same right is now vested in the District of Columbia; for the benefits and immunities conferred by the act of Congress of 1831 are such only as belong to- the company “ within the State of Maryland.” Whether Maryland has or has not chosen to use this power of taxing the company, is a matter which should have no influence upon the question. If the power belonged both to Maryland and to the United States, the policy of Maryland as to the road within her territory could have no effect upon the authority of the United States over the branch road within this District.
And the same may be said in regard to the decisions of the Court of Appeals of Maryland. So far as they give construction to the charter in that State as to questions of property, they are entitled to absolute authority; but as to rights claimed under the act of Congress, within this District, although entitled to great respect, they are not conclusive. We hold to the old rule, that charters, especially where the question is one as to the exemption of property from taxation, are to be construed strictly, and not liberally, or rather latitudinously, as laid down in Mayor v. Baltimore and Ohio Railroad Company, 6 Gill., 296. In another view, also, we think the claim for exemption cannot be sustained. The language of the act of Congress relied upon for this purpose is the following : “ The said Baltimore and Ohio Kailroad Company are hereby authorized to exercise the same powers, rights, and privileges, and shall be subject to the same restrictions, in the extension and construction of the said lateral railroad into and within the District, as they may exercise or are subject to under and by virtue of their said charter or act of incorporation, in the extension and construction of any railroad within the State of Maryland, and shall be entitled to the same rights, compensation, benefits, and immunities in the use of said road, and in regard thereto, as are provided in said charter.”
Here is certainly no express exemption of the property of the company from taxation; but the benefits and immunities *131 granted to the company are such as relate to the use of the road, and in regard to the use of the road, as are provided in the charter. That is the grammatical construction of the language. The relative “thereto” refers to its proper antecedent, the word “use,” and not the word “road”; so that the privileges so conferred were benefits and immunities in connection with the use and working of the road, and not as to the property of the company in the road. At the date, however, of the passage of this act of Congress, under which the exemption is claimed in the present case, through an occult reference to the company’s charter of 1827, that charter had been altered by an act of the Legislature of Maryland passed 22d February, 1831. This act recites that it was passed at the instance of the Baltimore and Ohio Railroad Company, and the object was to enable that company to construct the present branch road to the line of the District of Columbia. It provides for issuing additional stock, and reserves to the State the privilege of subscribing for the whole amount of the stock within two years, and grants the usual privileges in such cases; but also contains the following proviso: “ That nothing herein contained shall be so construed to preclude the Legislature of this State from the imposition of such taxes as may be reasonable and just, in accordance with the burdens imposed on other real or personal property.”
Now, by the fourteenth section of the charter of 1827, the company had previously been authorized to make, or cause to be made, lateral roads, in any direction whatsoever, in connection with said railroad, from the city of Baltimore to the Ohio River; and by the thirteenth section it was authorized to increase the amount of its capital stock to any extent required to accomplish the objects of the company. But no lateral road was ever constructed under these provisions, towards the District of Columbia, and the privilege, as thus, conferred by the charter of 1827, w'as partially surrendered in exchange for the act of 22d February, 1831, under which the State expressly reserved, as has been stated, the right to tax the road between the Relay station and the District line. *132 Such was the condition of the company at this date in relation to the branch road. It had surrendered its privilege to construct this branch road under the original charter, and consented to be taxed in exchange for the privileges conferred by the amendment. -Notwithstanding this fact, however, ten days afterwards Congress passed the act of 2d March, 1831, under -which the present claim to exemption is asserted, on the ground that this refers back to the “ immunities and benefits ” which had been conferred upon the company by the original charter. Undoubtedly there were benefits and privileges granted by the act of Congress relating to the use and control of the road which was to be constructed, but immunity from taxation w'as not one of them; for that had been expressly surrendered- to the State, and should be regarded as expunged from the charter at that date. The branch road was constructed alone in pursuance of the amended charter and the act of Congress, so that when the latter act refers to the charter of the company as the act which at that time authorized the company to construct the branch road, it must be understood to refer to the charter so amended by the act of 22d February, 1831. This is manifest from the preamble to the act, which is in these words :
“ Whereas it is represented to this present Congress that the Baltimore and Ohio Railroad Company, incorporated by an act of the General Assembly of Maryland entitled ‘An act to incorporate the Baltimore and Ohio Railroad Company,’ passed the 28th day of February, 1827, are desirous, under the powers which they claim to be vested in them by the pz’ovisions of the before recited act, to construct a latez’al branch from the said Baltimore and Ohio Railroad to the Distinct of Columbia; therefore, &c.”
This preamble contains a statement of the representation made to Congress by tbe company, and evidently refers to the charter, as then recently amended, for the purpose of enabling the company to construct the Mai’yland portion of the road; for at that time the company possessed no authority to construct a branch road towards the District, except *133 under the amendment. Then follows that part of the act under which this immunity is claimed, which, with its context, is as follows:
“Be it enacted, ¿•c., That the Baltimore and Ohio Bailroad Company, incorporated by the said act of the General Assembly of Maryland, shall be, and they are hereby, authorized to extend into and within the District of Columbia a lateral railroad, such as the said company shall construct, or cause to be constructed, in a direction towards the said District, iu connection with the railroad which they have located and are constructing from the city of Baltimore to the Ohio Biver, in pursuance of their said act of incorporation.' And the said Baltimore and Ohio Bailroad Company are hereby authorized to exercise the same powers, rights, and privileges, and shall be subject to the same restrictions in the extension and construction of the said lateral railroad into and within the said District, as they may exercise, or are subject to, under and by virtue of their said charter or act of incorporation, in the extension and construction of any railroad within the State of Maryland, and shall be entitled to the same rights, compensation, benefits, and immunities in the use of the said road, and in regard thereto, as are provided in their said charter,” &c.
Upon the whole, it appears to us that it was the intention of Congress by this act to give permission to the Baltimore and Ohio Bailroad Company to extend its road iuto and within the District, under the same charter by which the road was to be constructed to the line of the District, and that this purpose is expressed in the act, if we assume that the amendment is to be regarded as constituting a part of the charter. It was under this amendment, and this only, that the company was authorized to construct the branch between the main line and the line of the District; and in the act of Congress which we are construing, that act is referred to by the words “ pursuance of their said act of incorporation.”
In the construction of statutes, as well as wills, it is often *134 necessary that some particular intent should be made to yield to the principal and main intent of the Legislature. In the present ease the principal and main intent was to enable the company to construct its branch road within the District under the same charter by which it was about to consti’uct the Maryland end of the road.
Upon the whole, we think that no one could reasonably say that the claim of exemption from taxes set up by the company in the present case is such a claim as can be clearly made out; and this doubt is fatal to the claim. Statutes granting exclusive privileges are strictly construed. (Mohawk Bridge Co. v. Utica et al., 6 Paige, 554; Cayuga Bridge Co. v. Magee, 6 Wench, 85; Pennsylvania Railroad Co. v. Canal Commissioners, 21 Penn. St. R., 22; Commonwealth v. Pittsburg, &c., Railroad Co., 24 Id.)
The language of the Supreme Court of the United States in Bailey v. Maguire, 22 Wall., 226, applies with so much aptness and force to the facts of this case that we quote it at some length:
“ It has been held many times in this court that a State may make a valid contract that a corporation, or its property within its territory, shall be exempt from taxation, or shall be subject to a limited and specified taxation.
“The court has, however, in the most emphatic terms,^ancl ou every occasion, declared that the language in which the surrender is made must be clear and unmistakable. The covenant or enactment must distinctly express that there shall be no other or further liability to taxation. A State cannot strip itself of this most essential power by doubtful words. It cannot, by ambiguous language, be deprived of this highest attribute of sovereignty. This principle is' distinctly laid down in each of the cases referred to. It has never been departed from. (Erie Railway Co. v. Pennsylvania, 21 Wall., 498.)
“It is manifest that legislation which, it is claimed, relieves any species of property from its due proportion of the general burdens of government, should be so clear that there *135 can be neither reasonable doubt nor controversy about its terms. The power to tax rests upon necessity, and is inherent in eveiy sovereignty, and there can be no presumption in favor of its relinquishment. While it were better for the interest of the community that this power should on no occasion be surrendered, this court has always held that the Legislature of a State, unrestrained by constitutional limitation, has full control over the subject, and can make a contract with a” corporation to exempt its property from taxation, either in perpetuity or for a limited period of time. If, however, on any fair construction of the legislation, there is a reasonable doubt whether the contract is made out, this doubt must be solved in favor of the State. In other words, the language used must be of such a character as, fairly interpreted, leaves no room for controversy. * * * It is conceded that the exemption is not granted in express terms; but it is argued that, taking the whole section together, it arises by necessary implication. We do not think so. * * *
“ It is never for the interest of the State to surrender the power of taxation; and an intention to do so will not be imputed to it unless the language employed leaves no other alternative.” (Bailey v. Maguire, 22 Wall., 226, 227.)
The doctrines thus announced were reiterated by the same court, with still greater emphasis, in 22 Wallace, 528, and again in West Wisconsin Railway Co. v. Board of Supervisors, 3 Otto, 595. And in both these cases the court announces another doctrine, which goes still further, and seems to be altogether fatal to the present claim. That doctrine is thus stated in the syllabus to Tucker v. Ferguson: “An act of the Legislature exempting property of a railroad. from taxation is not a ‘ contract’ to exempt it, unless there be a consideration for the act. An agreement, where there is no consideration, is a unde fact — the promise of a gratuity spontaneously made, which may be kept, changed, or recalled at pleasure. And this rule of law applies to the agreements of States made without consideration as well as to those of persons,” And the court says: “ The case of Christ Church Hospital v. *136 The County of Philadelphia, 34 How., 301, is instructive upon this subject. In 1833 the Legislature of Pennsylvania passed an act declaring‘that the real property, including ground rents, now belonging to Christ Church Hospital, in the city of Philadelphia, so long as the same shall continue to belong to said hospital, shall be and remain free from taxes.’ In 1853 a law was passed which subjected the ground rents to taxation. The Supreme Court of the State sustained the validity of the latter act;” * * - * and the Supreraé Court of the United States unanimously affirmed this judgment.
And in the other case, in 3 Otto, 595, the doctrine is thus stated in the syllabus: “The doctrine announced in Tucker v. Ferguson, 22 Wall., 527, that an act of the Legislature of a State, exempting property of a railroad company from taxation, is not, when a mere gratuity on the part of the State, a contract to continue such exemption, but is always subject to modification and repeal in like manner as other legislation, reaffirmed, and applied to this case.”
That the exemption granted by the act of March 2, 1831, by the United States to the Baltimore and Ohio Railroad Company — conceding, for the sake of argument, that suc-h exemption was granted by that act — was a mere gratuity, and no contract, is manifest from the recital in the preamble, and, indeed, from every section. The act was passed at the solicitation of the company and for its benefit, and was wholly without consideration in favor of the government.
In regard to the length of time for which the company should be held liable, we are of opinion that such liability reaches back for a period of twenty years from the institution of the present suit. It is a liability created by statute, and nothing short of a lapse of time sufficient to raise the presumption of payment will exonerate the property from its liability, and that period is twenty years. (See Ang. on Lim., 83, and authorities cited.)