St. L., I. M. & S. Railway Co. v. Berry, et al, R. R. Commissioner.

41  509|
67  503
41  509'
|76  316

1. **TAXATION**: *Power of legislature to exempt from.*
   The legislature was not restrained by the constitution of 1836 from granting immunity from taxation, and could bind the State by an act exempting a railroad corporation from taxes.

2. **TAXATION**: *Immunity from: Construction of act.*
   Every act of the legislature granting immunity from taxes must be strictly construed, and be so clear that there can be no reasonable doubt or controversy about its terms. If, on fair construction, there is a reasonable doubt whether the contract of exemption claimed in the act is made out, this doubt must be solved in favor of the State. An intention to surrender the power of taxation will not be imputed unless the language of the act leaves no other alternative.

3. **RAILROADS**: *Consolidation: Effect of.*
   The legal effect of a consolidation of railroad companies is to extinguish the constituent companies and to create a new corporation with property liabilities and stockholders of the old companies which pass out of existence.

4. **CAIRO AND FULTON R. R.**: *Power to consolidate with other companies.*
   Under the charter of the Cairo & Fulton Railroad Company, it had no power to consolidate with other companies *after* it was completed, as the authority to consolidate was only to "facilitate its early construction." But it did have such power under the act of July 23rd, 1868.

5. **TAXATION**: *Immunity from, not transferred to consolidated company.*
   The immunity from taxation granted to a railroad company does not pass to a new company with which it becomes consolidated, unless the statute granting the immunity so clearly provides for its transfer as to leave no room for controversy.

6. **RAILROAD**: *Conditional exemption from taxes.*
   A provision in a railroad charter exempting the road and equipments from taxes until the income should amount to a certain per cent. per annum on the cost of construction and equipments, implies an accounting by the company to the State, showing the cost of construction and equipments and the annual receipts and expenditures of the road, as a means of ascertaining when the right to tax it accrues.

APPEAL from *Pulaski* Chancery Court.

Hon. D. W. CARROLL, Chancellor.

*J. M. Moore* and *Dodger & Johnson* for appellants.

*C. B. Moore*, Attorney General, and *U. M. and G. B. Rose*, for Appellees.

The exemption clause of the act incorporating the Cairo & Fulton R. R. Co., is to receive a strict construction. The rule governing in such cases is laid down very explictly in *Bailey v. McGuire, 22 Wall., 226.* It is never for the interest of the State to surrender the power of taxation, and an intention to do so will not be imputed to it unless the language employed leaves no alternative. *Ib.*

Exemptions from taxation are never presumed   *   *   * The presumptions are always the other way. *Railway Co. v. Loftin, 94 U. S., 594.*

The reference in the charter to that of the Mississippi Valley R. R. Co., does not help the plaintiff.

The rule as to the construction of what is called a "reference statute" is laid down in *Kiny v. Justices of Surrey, 2 Tenn. R., 510.*

In *R. R. Co. v. Loftin, 30 Ark., 711,* the reference clause is mentioned, but the court decided the case exclusively on the provisions of the charter of the Cairo & Fulton R. R. Co.

The supreme court of the U. S. said, "The twenty-fifth section of the Mississippi Valley charter, even if it was incorporated with that of the Cairo & Fulton Co., of which there may be doubt, does not materially change the effect of the eleventh section"—and they did not find it needful to pass on this question except as above. *Railway Co. v. Loftin, 94 U. S., 563.*

We assert that there is nothing in the charter of the Cairo & Fulton R. R. Co. authorizing it to consolidate with any other road. The word "consolidate" is not found in the charter. It is avoided with elaborate care.

To have allowed a consolidation would have defeated, forever, the enforcement of taxation as provided by the

eleventh section of the charter, whenever it should pay "ten per centum per annum." By consolidation, the consolidating companies are extinguished and a new corporation is created. *McMahan v. Morrison, 16 Ind., 172; Lauman v. Lebanon R. R. Co., 30 Penn. St., 42.*

This was not authorized by the tenth section of the charter, which gave the company power to make joint stock with any other railroad, "and to form one board of directors for the management of *their* (not its) affairs."

Where the legislature gives its consent to the consolidation of corporations, the effect is to dissolve the former corporations and create a new corporation upon such terms and conditions as may be prescribed by the act of consolition. *McMahan v. Morrison, 16 Ind., 172.* And the new consolidated corporation takes subject to the constitutional provisions in force when the consolidation takes effect. *State v. Sherman, 22 Ohio S., 411; Central Railroad Company v. State, 54 Ga., 402; Atlantic R. R. Co. v. State, 55 Ga., 312; State v. Northern C. R. R. Co., 44 Ind., 165; Shields v. Ohio, 26 Ohio St., 90; State v. Atlanta R. R. Co. 60 Ga., 269; Atlanta R. R. Co. v. State, 63 Ga., 485.*

It is argued that the paintiff R. R. Co. cannot be taxed without impairing the obligation of its contract with the State.

The question thus presented is a federal one, and the supreme court of the U. S. has decided the question in language that silences all debate, in *Shields v. Ohio, 95 U. S., 319*, a case in no wise distinguishable *in principle* from this. It differed from this case in two respects—

1. The acts permitting the consolidation were passed before the adoption of the new constitution of Ohio, of 1851

2. The provisions of the new constitution were less stringent than those of our constitution of 1868.

Yet the supreme court of the U. S. held that the privileges granted in the original charter, insofar as inconsistent with the constitution of 1851, had ceased to exist.

It is insisted that this question was decided the other way in *Zimmer v. State, 30 Ark., 677*. This question did not and could not arise in that case.

The remark of the court as to the effect of the consolidation in the chartered rights of the company were the merest *dicta*, and are in realty no part of the decision.

The doctrine laid down in *Shields v. Ohio*, has been affirmed in *R. R. Co. v. Maine, 96 U. S., 499*, a very strong case for us. And to the same effect is *R. R. Co. v. Georgia, 98 U. S., 359*.

The recently decided case of *Louisville R. R. Co., Palmes, 3 S. P. Reporter, 193*, merits special attention. The facts in that case are almost identical with the case under consideration. The court, reaffirming *Shields v. Ohio*, declared "that in cases of corporations created by consolidation, the powers of the new company did not pass to it by transmission from its constituents, but resulted from a new legislative grant, that could not transcend the constitutional authority existing at the time it took effect."

But even admitting we are wrong in all the foregoing propositions, the result is still the same.

The ten per cent. mentioned in the charter of the C. & F. R. R. Co., relates to "the amount invested in building and equipping it." *St. L. R. R. Co. v. Loftin, 30 Ark., 710*.

Plaintiff offered no admissible evidence of cost of construction and equipment. It did not even offer its books. If it had done so, they could not be regarded. *Burt v. Byers, 10 Ark., 398*; *State Bk. v. Barber, 12 Id., 775*; *Same v. Fowler, 15 Id., 160*; *Sessions v. Peay, 19 Id., 266*.

Estimates made second hand from the books by plain-

St. Louis, Iron Mountain & Southern R'y Co. v. Berry, et al, R. R. Com'r.

tiff's accountant are still worse. Those estimates are wonderful. Plaintiff's auditor says the books show a cost of construction and equipment of the C. & F. road up to date of construction, May 1, 1874, $23,157,000.62

In the Loftin case above cited (*30 Ark., 698*), the same plaintiff stated that "the total cost of said railroad and equipments was about $11,157,000." Now, in some mysterious way, it is more than doubled. According to this sliding scale, there is no hope that the road will ever pay the requisite ten per cent. As the testimony of plaintiff was inadmissible, it was not necessary to move to exclude it. *Fricks v. Rector, 4 Ark., 277 ; Barraque v. Price, 9 Id., 548 ; Hardy v. Heard, 15 Id., 188.*

The only testimony in the transcript, as to the cost of building and equipping the road, is that of the witness Hughes.

His estimate, made from actual acquaintance with the cost and construction of railroads in this State, (including bridges first made of wood and now replaced by iron), of the total cost of the road and its equipments is $7,712,500.

The auditor of plaintiff states the net income of the main line in Arkansas for 1882 to be $1,312,612.26, which is more than ten per cent. on $7,712,500.

Even taking the branch roads of plaintiff into consideration, which cannot be done, as they are plainly not included in any exemption with the main road, the evidence shows the net earnings of the road largely over ten per cent.

Undoubtedly, plaintiff *never had any exemption*, but if it ever had, the evidence clearly shows that its prosperity has outgrown the exemption, and the exemption has long since ceased.

SMITH, J. This suit was brought for the purpose of enjoining the board of railroad commissioners from assessing for taxation the plaintiff's road, rolling stock, fixtures

and appurtenances.   The claim of exemption is based upon the charter of the Cairo and Fulton Railroad Company, granted January 12, 1853.

The provisions of the charter, so far as they affect the present case, are as follows:

"Section 10.   Said corporation shall have power to unite their road with the southern end of the Missouri road at some suitable point on the line which divides these two States, and its southern end with any road coming in from Texas, at such point on the boundary line which divides that State and Arkansas that may be deemed most eligible, and to make any contract or agreement with any other railroad company in reference to their business that may best insure the early construction of said road and its successful man-agement, and also to make joint stock with any other rail-road company in this or any other State, and to form one board of directors for the management of their affairs, if it should be found necessary to facilitate the early construc-tion of their said road.   The contract or agreement of the respective boards shall form a part of their respective char-ters whenever the same may be entered into, and recorded with their charters,"—*Acts 1852, p. 180.*

"Sec. 11.   That the said capital stock and dividends of said company shall be forever exempt from taxation, the road, fixtures and appurtenances shall be exempt from taxa-tion until after it pays an interest of not less than ten per cent. per annum."

"Sec. 13.   This act shall be deemed a public act, and shall be favorably construed for all the purposes therein expressed and declared, in all courts and places whatsoever, and shall be in force from and after its passage; *provided* that all the rights, privileges, immunities and franchises contained in the charter granted at this session of the legis-lature of this State to 'The Mississippi Valley Railroad Company,' and not restricting or inconsistent with this act,

are hereby extended to and shall form a part of this incorporation, as fully as if the same was inserted herein.''

Sec. 25 of the charter of the ''Mississippi Valley Railroad Company'' reads as follows : ''The capital stock of said company, with all its immunities and franchises herein specified, and all machines, cars, engines, or carriages belonging to said company, together with all their works and property, and all profits which shall arise from the same, shall be vested in the respective stockholders of the company forever, in proportion to their respective shares. And the capital stock of said company and the dividends shall be exempted from taxation until a dividend of six per cent. is realized upon the capital stock, and the road, with all its fixtures and appurtenances, including workshops, warehouses and vehicles of transportation, shall be exempted from taxation for the period of twenty-five years from the completion of the road, and no tax shall ever be levied on said road or its fixtures, which will reduce the dividends below ten per cent. per annum. Said stockholders shall not be bound or liable for any greater amount than the respective shares or stock which they or either of them own.''

The complaint states that plaintiff's road was completed on the fifth day of December, 1873. Also, that under the ''tenth section of its charter it consolidated with the St. Louis and Iron Mountain Railroad Company, a corporation organized and created under the laws of Missouri, whose road connected with the said Cairo and Fulton Railroad at the line between said States, and assumed the corporate name of the St. Louis, Iron Mountain and Southern Railway Company, and on the second day of June, 1874, filed articles of consolidation in the office of the secretary of state, and that its road had never paid an interest of ten per cent. per annum, and had never made nor declared any dividend on its capital stock. Nevertheless, the legislature of this State had, by a statute approved March 31, 1883, enti-

tled, "an act to revise and amend the revenue laws of Arkansas," required the plaintiff to return a sworn schedule of its property with a view to taxation; and the defendants, a board of railroad commissioners, were proceeding to assess said road, fixtures and appurtenances.

The answer is as follows:

"I. That the consolidation mentioned in the complaint was effected after the completion of said Cairo and Fulton Railroad, and was had in virtue of the forty-third section of an act of the general assembly of the State of Arkansas, entitled 'an act to provide for a general system of railroad incorporation,' approved July 23, 1868.

"II. Said capital stock of said Cairo and Fulton Railroad Company has paid an interest of ten per cent. per annum, and said road has paid a like interest. "

The law referred to in the first paragraph of the answer reads as follows:

"Sec. 43. Any railroad company now chartered under existing laws, or which may hereafter become incorporated under this law, shall have power and authority to purchase and hold any connecting railroad and operate the same, or to consolidate their companies and make one company under the name of one or both, or any other name; but when such purchase is made or consolidation is effected, the said company shall have and be entitled to all the benefits, rights, franchises lands and tenements, and property of every description belonging to said road or roads so sold or consolidated; and shall be liable to all the pains and penalties imposed by their respective charters. "

Depositions were taken as to the cost and income of the road, and upon final hearing the chancellor dismissed the bill.

1. TAXA-
TION:
Power of
Legisla-
ture to ex-
empt from
The plaintiff can derive no benefit in this suit from the reference in its charter to the charter of the Mississippi Valley Company. By the thirteenth section above quoted,

St. Louis Iron Mountain & Southern R'y Co. v. Berry, et al, R.R. Com'r.

"all the rights, privileges, immunities and franchises contained in the charter of the Mississippi Valley Railroad and not restricting or inconsistent with this act," are extended to the Cairo and Fulton Company as fully as if the same had been inserted in its act of incorporation. By a comparison of the exemption clauses in the two charters, it will be seen that the provisions as to the exemption from taxation are fundamentally different. They are therefore inconsistent, and the special provisions on this subject in the charter of the Cairo and Fulton Company are not enlarged by the reference clause.

The constitution of 1836, in force when the charter was granted, contained no restraint on the action of the legislature in granting immunity from taxation. Hence the general assembly had the power to bind the State in relinquishing its power to tax this corporation.

But every such immunity must receive a strict construction. "It is manifest that legislation which it is claimed relieves any species of property from its due proportion of the general burdens of government should be so clear that there can be neither reasonable doubt nor controversy about its terms. * * * If, on any fair construction of the legislation, there is a reasonable doubt whether the contract is made out, this doubt must be solved in favor of the State. In other words, the language must be of such a character as, fairly interpreted, leaves no room for controversy." *Bailey v. McGuire, 22 Wall., 226.*

"It is never for the interest of the State to surrender the power of taxation, and an intention to do so will not be imputed to it unless the language employed leaves no other alternative." *Ib.*

But it is argued that this rule is suspended by the thirteenth section of the charter, which provides that it shall be *liberally* construed "for the objects therein set forth." The rule of strict construction, universally applied to exemp-

2. SAME: Construction of act exempting from.

tions from taxation, demands that this provision shall be limited in its operation to the powers granted to the corporation. It cannot be supposed that the Legislature intended any laxity of construction in a matter so vital to the public interest as that of taxation.

But, by its charter, a limited and conditional exemption from taxation was granted to the Cairo and Fulton Company. It only remains to consider whether the plaintiff is the same corporation to which the grant was made, or has succeeded to its rights in this respect.

3. OF RAIL-ROADS: Effect of consolidation.
Obviously, the plaintiff is not the old Cairo and Fulton Company, nor does it claim to be. The complaint shows a consolidation with a Missouri corporation. And in the absence of a contrary intention, clearly expressed in the law authorizing it, the legal effect of a consolidation is to extinguish the constituent companies and to create a new corporation, with property, liabilities and stockholders derived from those then passing out of existence. *McMahan v. Morrison, 16 Ind., 172*; *Lawman v. Lebanon Railroad Co., 30 Pa. St., 42*; *Clearwater v. Meredith, 1 Wall., 25*; *State v. Sherman, 22 Ohio St., 411*; *Shields v. State, 26 Id., 86*: Same case on error, *95 U. S., 319*; *Central Railroad Co, v. Georgia, 92 Id., 665*; *Railroad Co. v. Maine, 96 Id., 499*; *Railroad Co. v. Georgia, 98 Id., 359*.

4. C. & F. R. R. Co. Power to consolidate with other companies.
But the claim is that the Cairo and Fulton Company, pursuant to authority contained in its charter, united itself with the St. Louis and Iron Mountain Company, and that the resultant company, the present plaintiff, is entitled to all the rights, privileges and immunities of the original companies, including the exemption from taxation granted by the Cairo and Fulton charter. This consolidation was effected on the thirtieth of April, 1874, and after the completion of the road which the old company was incorporated to build. Upon a fair construction of this charter,

the power to consolidate with any other railroad company in or out of the State was given. But, unless we are to pay no attention to the clause, "if it should be found necessary to facilitate the early construction of their said road," the exercise of this power must be limited to the period during which the road was in process of construction. Hence the Cairo and Fulton Company had not power, by virtue of its charter, to consolidate with the St. Louis and Iron Mountain Company on the thirtieth of April, 1874.

We attach no importance to the extra-judicial remarks of the judge who delivered the opinion in *Zimmer v. State*, *30 Ark.*, *677*, to the effect that this consolidation was effected by virtue of a charter provision, and that the St. Louis, Iron Mountain and Southern Company had succeeded to all the rights, privileges, franchises and immunities of the Cairo and Fulton company. It did not appear in that case that the consolidation took place after the completion of the road. The right to consolidate and the effect of consolidation upon the chartered rights of the company were expressly withdrawn from the consideration of the court by agreement of counsel.

That case arose in this way : Zimmer, an employe of the St. Louis, Iron Mountain and Southern Railroad, was indicted for failure to work on the public road. Now the charter of the Mississippi Valley Company exempts its servants from road duty. . And the only question which could have been properly decided on that record was whether the reference clause in the charter of the Cairo and Fulton Company was operative to confer a like exemption upon the servants of the last named company. For the bill of exceptions in that case shows that it was expressly admitted that, if the Cairo and Fulton Company had ever enjoyed this exemption, then by virtue of the consolidation it had passed to the St. Louis, Iron Mountain and Southern Company.

520      SUPREME COURT OF ARKANSAS,

St. Louis, Iron Mountain & Southern R'y Co. v. Berry, et al, R. R. Com'r.

**2. TAXA-**
**TION:**
**Immun-**
**ity from,**
**not trans-**
**ferred to**
**consoli-**
**dated**
**company.**

But if we are in error in our position that the charter did not authorize consolidation after the road was finished, it is to be observed that the charter is silent about the effect of consolidation upon the corporate rights, powers, privileges and immunities granted by it. It does not declare that the new corporation shall be entitled to all the benefits, rights and franchises of the old corporations. Now it is an unbending rule of construction that an exemption from taxation is *strictissimi juris*. As it is never created in the first instance by implication, so it is never extended by construction. A claim of this sort cannot be supported, unless the statute alleged to confer it is so plain as to leave no room for controversy. "In the construction of a charter, to be in doubt is to be resolved, and every resolution which springs from doubt is against the corporation." *Charles River Bridge v. Warren Bridge, 11 Peters, 543; Central Railroad Company v. Georgia, 92 U. S., 674; Penn. Railroad Co. v. Canal Com'rs, 21 Pa. St., 9 per* BLACK, C. J.

We do not mean to say that the consolidation of these two companies was, at the time it took place, unlawful. The act of July 23, 1868, providing for a general system of railroad incorporation, was then in force; and its forty-third section (*sec. 4,969 of Gantt's Digest*) authorized consolidation, and declared that the company springing from such union should succeed to all the benefits, rights, franchises, lands and property of every description belonging to the roads so consolidated. But before the passage of that act the constitution of 1868 had taken effect, and it contained the following provisions:

"The general assembly shall pass no act conferring corporate powers. Corporations may be formed under general laws, but all such laws may from time be altered or repealed." *Art. V, sec. 8.*

"The general assembly shall not grant to any citizen or

St. Louis, Iron Mountain & Southern R'y Co. v. Berry, et al, R. R. Com'r.

class of citizens privileges or immunities which upon the same terms shall not equally belong to all citizens. " *Art. I, sec. 18.*

"The property of corporations now existing or hereafter created shall forever be subject to taxation the same as property of individuals." *Art. V, sec. 48.*

Now, if the act of 1868 was the sole authority for the consolidation at the time that it actually took place, there can be no doubt that the plaintiff in this suit took the Cairo and Fulton charter subject to the constitutional provisions then in force. In that view the present case is not distinguishable from *Shields v. Ohio, 95 U. S., 319*; *Railroad Co. v. Georgia, 98 U. S., 359*; and *L. & N. R. Co. v. Palmes, 3 Supreme Court Reporter, 193.* In the last of these cases it was said " that in case of corporations created by consolidation, the powers of the new company did not pass to it by transmission from its constituents, but resulted from a new legislative grant that could not transcend the constitutional authority existing at the time it took effect. * * * The exemption was not impressed upon the property itself, into whosesoever hands it might afterwards come, following the title like an easement or covenant running with the land. * * * The grant is to a person in respect of a thing, * * * There must always be a person capable, not only of receiving the title, but also of accepting the conditions accompanying it and which constitutes the exemption ; otherwise the conditions become impossible and void. * * * After the adoption of the constitution of 1868 there could be no corporation created capable in law of accepting and enjoying such an exemption. "

There is another consideration which leads to the same result. The exemption of the Cairo and Fulton Company was not absolute and perpetual, but conditional and qualfied. No tax was to be levied until ten per cent. per annum **6. RAIL- ROADS: Conditional exemption from taxation.**

on the amount expended in building and equipping it was realized. *St. Louis Railway v. Loftin, 30 Ark., 718.*

This provision undoubtedly implied an accounting between the company and the State. It imposed upon the company the duty of keeping accounts of the cost of construction and equipment of its road, and of its receipts and expenditures. Else, how could it be ascertained whether the contingency had arisen upon which the road was to become taxable?

But the new company was subject to no such duty. This brings the case within the operation of the principle laid down in *Railroad Company v. Maine, 96 U. S.. 499,* where it was said :—

"The assets of all the companies were intermingled, and continuous trains were running over the whole length of the several roads. It would have been impossible to show what would have been the profit of each road without the consolidation. Only an approximation to them would have been attainable ; and that would have been based upon estimates more or less speculative in their character.

"The consolidation of the original companies was a voluntary proceeding on their part. The law made it dependent upon their agreement. Having thus disabled themselves from a compliance with the conditions, upon the performance of which the amount to be paid as a tax to the State could be ascertained, they must be considered as having waived the exemption dependent upon such performance. Their exemption was qualified by their duties, and dependent upon them. They incapacitated themselves from the performance of those duties by a proceeding which they supposed would give them greater advantages than their exemption. The new company was not charged with the duties which they were to perform to the State, and by which the State was to be governed in its taxation, nor was the State under any obligation to accept a substituted performance from other parties."

The chancellor, as it appears from his written opinion, found that that part of the plaintiff's road in this State, and formerly known as the Cairo and Fulton road, had yielded by its operations a net income of ten per cent. per annum on the cost of construction and equipment. What we have already said renders it unnecessary to go into this question. In the very nature of things, it is impossible to do more than guess at it. It appears by the plaintiff's own proof that its officers cannot tell, save by an approximation, what the actual earnings of this part of the road are.

The decree is affirmed.