Yazoo and Mississippi Valley Railroad Company

*v.*

S. B. Thomas et al., Tax Collectors.

| 65 | 553 |
|----|-----|
| 75 | 282 |
| 65 | 553 |
| 76 | 551 |
| 65 | 553 |
| e77 | 280 |
| 65 | 553 |
| 81 | 117 |
| e81 | 118 |

1. Taxation. *Exemption therefrom. Statute, how construed.*

A statute purporting to exempt persons or property from taxation must be strictly construed; and to create such exemption it, must express the legislative intent therefor in terms so clear and unambiguous as to preclude reasonable doubt or controversy in respect thereto.

2. Same. *Statute providing for exemption therefrom construed. Charter of Y. & M. V. R. R. Co.*

The charter of incorporation of the Y. & M. V. R. R. Co., approved February 18, 1882, declared, in the eighth section thereof, "That in order to encourage the investment of capital in the works which said company is hereby authorized to construct and maintain, and to make certain, in advance of such investment, and as an inducement and consideration therefor, the taxes and burdens which this State will or will not impose thereon, it is hereby declared that said company, its stock, its railroads and appurtenances, and all its property in this State, necessary or incident

to the full exercise of all the powers herein granted—not to include compresses and oil mills—shall be exempt from taxation for a term of twenty years from the completion of said railroad to the Mississippi river, not to extend beyond twenty-five years from the date of this act; and when the period of exemption herein prescribed shall have expired, the property of said railway company shall be taxed at the same rate as other property in this State." *Held*, that the exemption created by the statute quoted was intended to commence from and after the completion of the contemplated railroad to the Mississippi river, and to continue thereafter for twenty years, if the road should be thus completed in five years from the approval of the statute, but to be liable to diminution by whatever time beyond five years should be consumed in the construction of the road to the river.

Appeal from the Chancery Court of Hinds County.

Hon. Warren Cowan, Chancellor.

Under an act of the legislature, approved April 3d, 1888, entitled, " An Act to provide for the assessment and collection of past due and unpaid taxes on railroads which have escaped the payment of taxes," an *ad valorum* tax, for the years 1885, 1886 and 1887, had been assessed against the property of every description belonging to the Yazoo & Mississippi Valley Railroad Company, and the tax collectors, severally, of the counties of Hinds, Madison, Yazoo, Holmes, Leflore and Grenada were about to proceed with the collection of the same when, on July 17th, 1888, the railroad company filed the bill in this case against such tax collectors, for an injunction prohibiting the collection of the tax.

The bill states as follows :

" Orator was incorporated by·an act of the Legislature of the State of Mississippi, February 18th, 1882, entitled, ' An Act incorporating the Yazoo & Mississippi Valley Railroad Company, and declaring its powers ; ' orator accepted the charter, organized under it, and proceeded with the work of constructing . its railroad and branches, beginning at the city of Jackson, in Hinds County, having its initial point at the Chicago, St. Louis & New Orleans Railroad, and proceeding through parts of the counties of Hinds, Madison and Yazoo, to Yazoo city ; and thence through Yazoo county into Holmes county, with a branch to the town of Lexington in said county, and by another

line of road to Greenwood, in Leflore county, and thence into
Grenada County; that its road to Yazoo City was completed and
opened for traffic on the 1st of May, 1884, in length 45 miles, and
the remainder of said road and branch was finished for traffic by
Sept. 1st., 1886, the aggregate mileage being 140 miles. "

"The enterprise, so chartered and projected, was deemed
hazardous in a financial view by the Legislature and the projectors,
as may be best comprehended by reference to the preamble and
the second and eighth sections of the act of incorporation, viz.:

" Preamble.—Whereas the construction of railroads to, in,
through and along the Mississippi River basin, and the Yazoo
and Sunflower basins, penetrating these and other alluvial lands
in this State, west of the Chicago, St. Louis and New Orleans
Railroad, and connecting them by railroad and branches with
other railroads, west, east, north and south, is deemed, and
hereby declared to be a work of great public importance, and,
in strict accordance with the policy and the interests of this
State, should be encouraged by legislation and liberality; and
whereas, the physical difficulties of constructing and maintain-
ing railroads to, across, along or within, either the Mississippi,
Sunflower, Deer Creek or Yazoo bottoms or basins, or the other
alluvial lands herein referred to, are such that no private com-
pany has, so far, been able to establish a railroad and branches
developing said basins and alluvial lands, and connecting them
with the railroad system of the country; now, therefore, in
order to induce the investment of capital in the construction
and operation of such a railroad and branches, and thus develop
the resources of the State," etc.

" Section 2. *Be it further enacted,* That said corporation
shall also have, and it is hereby authorized and invested with,
the right and powers to build and construct, and thereafter to
use and operate, own and enjoy, a railroad or railroads, with one
or more tracks, into, along and across that part of the State of
Mississippi between the Mississippi River and Chicago, St. Louis
and New Orleans Railroad, or such lines as shall be deemed best
by the board of directors of the company hereby chartered; one
of the lines, or a branch thereof, to reach the Mississippi River
at or near a point opposite Arkansas City, if practical, so as to

connect such point, on the east bank of the Mississippi River, with some point or points on the line of the Chicago, St. Louis and New Orleans Railroad; one of said lines, or a branch thereof, to pass through Yazoo City, Mississippi; and said company shall have the right and power, and are hereby authorized, to build one or more branches or lines of railroad between the Mississippi River and Deer Creek, and between the Deer Creek and the Sunflower River, and between the Sunflower River and the Yazoo River, in the direction of, or to, the north line of this State, and extend the same, or any one thereof, in the direction of, or to, the south boundary line of this State, as shall, from time to time, in the judgment of the company, be deemed proper; and shall also be authorized to construct and operate such spurs and laterals, from or along such main line or branches, not exceeding 100 miles in length, as may, from time to time, be necessary or proper to fully develop said country lying west of the Chicago, St. Louis and New Orleans Railroad and east of the Mississippi River, in this State; and the said company, as soon and whenever, from time to time, they have located said line or lines of railroad, or branches, spurs or laterals thereto, or any of them, shall file in the office of the Secretary of State a statement showing the general line thereof, so far as the same has, up to that time, been located.

" Section 8.—*Be it further enacted*, that, in order to encourage the investment of capital in the works which said company is hereby authorized to construct and maintain, and to make certain, in advance of such investment, and as an inducement and consideration therefor, the taxes and burdens which this State will or will not impose thereon, it is hereby declared that said company, its stock, its railroads and appurtenances, and all its property in this State, necessary or incident to the full exercise of all the powers herein granted—not to include compresses and oil-mills—shall be exempt from taxation, for a term of twenty years from the completion of said railroad to the Mississippi river, not to extend beyond twenty-five years from the date of this act, and, when the period of exemption herein prescribed shall have expired, the property of said railway company shall be taxed at the same rate as other property in this State. All

of said taxes to which the property of said company may be subjected in this State, whether for county or State, shall be collected by the treasurer of this State and paid into the treasury, to be dealt with as the legislature may direct; but said company shall be exempt from taxation by cities and towns.

" Orator states and charges, on belief and legal advice, that its exemption from taxation began at the date of its charter, and will continue for twenty-five years from that date; that it was the intention of the legislature, in said 8th Section, to grant a period of exemption which should begin at the date of the approval of the act of incorporation absolutely. Its duration was to be contingent. It was not to extend beyond twenty-five years from that date, and twenty years from completion of a line or branch to the Mississippi river. It was to be terminated by the lapse of twenty years from said completion of a line or branch to the Mississippi river, or by the lapse of twenty-five years from the date of the charter, whichever should first happen. There was to be an extreme outer limit beyond which the period would not extend, but short of which it might be made to end, to wit; by the lapse of twenty years from the completion of a line or branch to the river, should that prove practicable."

The bill further charges that its property is not subject, according to its charter, to the taxes the collection of which is sought to be enjoined, and that the proceedings for the collection of the same are without legal authority; that to apply the act of 1888, in relation to railroads which have escaped taxation, to complainant's road, " will be to violate the charter contract which exempts orator's road from taxation; that such application of said act is the same as a repeal or revocation of the grant of exemption, and therefore in volation of the Constitution of the United States forbidding such violation; and that to impute a legislative intent to compel orator to pay taxes, is to render said act of 1888 an act impairing the obligations of a contract and void, because in violation of the Constitution of the United States, as well as the constitution of this state."

The prayer of the bill is that, on final hearing, complainant's right to the exemption claimed be established, the proceedings

for the collection of the tax be declared illegal, and the collection of the tax be perpetually enjoined.

The defendants demurred to the bill; the demurrer was sustained, and the complainant appealed to this court.

*W. P. & J. B. Harris,* for the appellant.

It is obvious that the scheme for this corporation, as relates to taxation, was as exclusive as is every regulation which purports to be complete for a particular subject. This is complete in the same way that every other matter dealt with in the charter, whether of privilege or power or duty or burdens. This would follow on the general principle that when the legislation is of a character to indicate that it is complete for that subject, it is exclusive of all other regulation. The fourteenth section repeals all general laws which might conflict with the eighth section. *Swann* v. *Buck,* 40 Miss., 268; *Gibbons* v. *Brittain,* 55 Miss., 232.

A period of exemption is granted absolutely by the terms "shall be exempt from taxation," contained in the 8th section of the charter. The legislature then proceeds to deal with its *duration* or *extension,* because taxation can only begin when it ceases. There is but one period of exemption and that is absolute; its duration is contingent. Two measures are provided, neither of which is ultimate and absolute. If the Mississippi river shall be reached in less than five years, then we are to apply the measure of twenty years to determine the ultimate duration; if that event be delayed beyond five years, then the duration is to be measured by the twenty-five years, and the measure which can be first applied, must be applied, and this is the *certainty* of *termination.*

Now, if the legislature in combining these two measures, by which the *termination* of the privilege is to be fixed (apparently giving two periods), has stated a beginning point at the date of the act, as the point from which the time, the privilege is to last, is to be computed, that is enough. It has in effect said that the date of the act is the beginning point, in the face of the granting clause, from which to compute *duration.*

If it was intended that the time of exemption was to be twenty years *only,* and was to be computed from the time the road

reached the Mississippi by a "line or branch," that intention would be fulfilled without the added or qualifying words "but not to extend beyond, etc." But if the intention was to give more than twenty years, and the time to be computed from the date of the grant, its natural beginning, then the qualifying words are necessary and perform the office of insuring a *termination* of the exemption within twenty-five years at most, and that was the object, as the *event* was uncertain both as to happening and as to time of occurrence. The uncertainty whether the river could be reached would postpone taxation indefinitely, as exemption was to precede it. It seems clear, therefore, that the words relating to *time*, 20 and 25 years, refer to the duration of the exemption, or the termination only and not to the beginning of the exemption, which is assumed to be the date of the grant. The privilege was to last more than 20 years, because some time must elapse before reaching the river.

The exemption is granted in absolute terms and was assumed to begin at the date of the act. Its *duration* is made contingent (not exemption itself) by the terms relating to the duration of it. It is to be terminated either by the lapse of 20 years after reaching the river, or 25 years from the date of the grant, whichever might first happen.

*W. P. Harris*, of counsel for the appellant, argued the case orally.

*C. V. Gwin*, on the same side, filed an elaborate brief, discussing the construction and effect of appellant's charter so far as it relates to the subject of exemption from taxation, and asserting the right of the appellant to the relief demanded in the bill of complaint herein.

*T. M. Miller*, Attorney-General, for the appellees.

It is submitted upon reason and authority that if Section 8 of appellants' charter had ended with the words "completion to the Mississippi river," then there could be no shadow of question but that under the general revenue laws of the State, applicable to the taxation of railroads, the property of this company would be liable to taxation until the arrival of the period indicated. So the question is what effect shall be given to the further language: " but not to extend beyond twenty-five

years from the date of the approval of this act?" Shall it be said that this language was intended to alter the period when the exemption should begin? There is nothing to indicate such a purpose, and I am not aware of any authority in statutory construction which would warrant such a view.

It seems clear that it would be most rational to hold that the purpose and only purpose of this qualification was to hasten the building of the road according to the charter powers; for otherwise, *no matter when completed*, the twenty years of immunity would arise; whereas, by this qualification, the work must be done in five years to get the full exemption of twenty years on the whole line. Every day of delay after five years would shorten the exemption so much, but there was no *term* in advance of the completion.

The residue of the section can produce no difficulty; it was unnecessary and added nothing to the general law. Of course, upon the expiration of the period of exemption, without a word being written, the company would be subject to taxation at the same rate as other property.

Taxation here must be left to the *general law*, which indeed may be said to *supplement* particular acts, just as the common law enters into statutes.

Under the provisions of the Code, this road was not subject to taxation while in process of construction merely; but did become subject as soon as any part of its line began to be operated for profit. Code of 1880, § 608.

It seems to have been the purpose of the Legislature in granting this charter to provide for an extensive scheme of development in the richest part of the State, but theretofore inaccessible in a great degree. The idea was to give two outlets : one to the great river, and one to the capital and great railroad centre. Now, if exemption from taxation could be considered as an inducement of any weight with the corporators to engage in this beneficial scheme, taking the position of the counsel, we find that a premium would be absolutely held out for the *non-completion* of the road to the river; for an exemption of twenty years is given from completion to the river; whereas twenty-five years is granted provided the river is not reached at all.

Substantially the same question here involved came before the Supreme Court of Louisiana in the case of the *Dennis* v. *Vicksburg, Shreveport and Pacific R. R. Co.*, 34 La. Ann., 954, and was decided against the exemption. Ib., 116 U. S., 665.

The Attorney-General argued the case orally.

*Hooker & Wilson*, on the same side, filed a lengthy brief, controverting the right of appellant to the relief demanded in the bill of complainant, and citing the following authorities: *Missipippi Mills* v. *Cook, Sheriff*, 56 Miss., 40, Code, 1880, Secs. 468, 597, 608; Burrough's on Taxation, Sec. 53; Cooley on Const. Lim., Secs. 514–15, and notes; *People* v. *McCreery*, 34 Cal., 432; *McCulloch* v. *Stone, Auditor*, 64 Miss., 378; *R. R. Co.* v. *Dennis*, 34 La. Ann., 954.

*G. A. Wilson*, of counsel for the appellees, made an oral argument.

*Calhoon & Green*, on the same side, cited the following authorities:

1. As to the construction of statutes generally: Potter's Dwarris, 107–8 and notes, and 125–6 and 141; *United States* v. *Fisher*, 2 Cranch, 358; Sedgwick on Stat. & Const. Law, 51; 9 Peters, 301; 3 McCool, 298; 3 Wharton, 610.

2. As to a statutory contract of exemption from taxation: *Jefferson* v. *Skelly*, 1 Blatch., 436; *Gilman* v. *Sheboygen*, 2 Blatch., 510; *Philadelphia* v. *Maryland*, 10 Howard, 376; *Bailey* v. *Magwire*, 22 Wallace, 215; 22 Wallace, 528; 21 Wallace, 498; 18 Wallace, 206; 7 Sup. Ct. Rep., 693; Cooley on Taxation, 204 and note, 205 and note, 70; *Vicks. S. & P. R. R. Co.* v. *Dennis*, 6 Sup. Ct. Rep., 626; *Baton Rouge, etc. R. R. Co.* v. *Kirkland*, 33 La. Am., 622; 34 La. Am., 954.

3. As to the power of the Legislature to exempt from taxation: Const. of U. S., Sec. 20, Art. 12; *Missipippi Mills* v. *Cook*, 56 Miss., 40.

*Rush & Gardner* and *Nugent & McWillie*, on the same side, filed a brief discussing at length such of the provisions of appellants' charter of incorporation as relate to exemption from taxation, the meaning and construction thereof, and the legislative purpose in enacting the same, and denying that there is any

such statutory contract of exemption as is claimed by appellant in its bill.

Arnold, C. J., delivered the opinion of the Court.

Statutes exempting persons or property from taxation, being in derogation of the soverign authority and of common right, are, according to all the authorities, strictly construed. As taxation is the rule and exemption the exception, the intention to create an exemption must be expressed in clear and unambiguous terms; and it cannot be taken to have been intended, when the language of the statute on which it depends is doubtful or uncertain. Legislation, which relieves any species of property from its due proportion of the burdens of government, must be so clear that there can be neither reasonable doubt nor controversy in regard to its meaning. Cooley on Taxation, 2d Ed., 204; *Bailey* v. *Magwire*, 22 Wall., 215; *Vicksburg, Shreveport & Pacific Railroad Co.* v. *Dennis*, 116 U. S., 665; *Frantz* v. *Dobson*, 64 Miss., 631.

In the light of these principles, we are unable to find any thing in the charter of appellant to warrant the exemption claimed in this case. It is quite plain to us, that the exemption created by Section 8 of appellants' charter, Acts of 1882, page 147, was intended to commence from and after the completion of a railroad to the Mississippi river, and was to continue thereafter for twenty years, if the road was completed to the river in five years from the date of the approval of the act, but liable to be diminished by whatever time beyond five years was consumed in the completion of the road to the river.

At the time appellants' charter was enacted, as now, railroads in process of construction and not finished and used for profit, were not taxable under the general laws of the State. Code, Sec. 608; and this may account for the charter providing exemption from taxation after the completion of the road, and none during the period of its construction.

*Affirmed.*