## SAVANNAH *v.* JESUP.

1. Where a foreclosure suit was brought, and the municipal corporation within which the mortgaged property was situate was allowed to intervene and set up a claim for taxes thereon — *Held,* that the order of the Circuit Court rejecting the claim is binding upon the corporation, and the latter is entitled to an appeal where the amount of taxes is sufficient to give this court jurisdiction.

2. Certain taxes assessed for the years 1877 and 1878, by the city of Savannah, upon land situate within its limits, which belongs to the Atlantic and Gulf Railroad Company, *held* to be unauthorized by law.

APPEAL from the Circuit Court of the United States for the Southern District of Georgia.

The facts are stated in the opinion of the court.

*Mr. Alexander R. Lawton* for the appellant.

*Mr. Walter S. Chisholm* for the appellee.

MR. JUSTICE HARLAN delivered the opinion of the court.

In *Georgia* v. *Jesup, ante,* p. 458, will be found a brief statement of the history of a suit which Jesup, as surviving trustee, commenced on the 15th of February, 1877, in the Circuit Court of the United States for the Southern District of Georgia, against the Atlantic and Gulf Railroad Company, a Georgia corporation, for the foreclosure of certain mortgages, covering the main line and branches of that company, with their respective appurtenances, rolling-stock, equipment, &c. In addition to the facts there stated, it may be added, that on the 10th of April, 1879, — the mortgaged property being then, as it had been since Feb. 20, 1879, in the actual possession of receivers, — the city of Savannah, a municipal corporation of Georgia, by leave of court, filed, in the cause, its petition *pro interesse suo.* It was therein alleged that the city was a creditor of the railroad company, in this, that the latter was indebted to the city for taxes " upon real estate owned and used for its legitimate corporate purposes," within the corporate limits of Savannah, in the sum of $2,853.75 for the year 1877, and $3,720 for the year 1878; and that for those sums execution had duly issued on the 20th of January, 1877, and the 1st of March, 1879, respectively, and were then in the hands of the city mar-

shal to be levied on the goods, chattels, lands, and tenements of the company. The prayer of the city was that it be heard in its own interest; that the court would authorize it to proceed in the collection of the taxes by levy and sale, under its ordinances and the laws of the State; else order the receivers to pay the taxes out of the funds and property in their possession, or give such other and immediate relief in the premises as to the court seemed proper.

This intervening petition, having been submitted and considered upon the merits, was, by order of the court, dismissed. Subsequently, the main cause was heard upon bills and answers, and the various interventions filed, and a final decree rendered, in which, among other things, it was recited that various persons had intervened for their interest, claiming to have liens against the property of the company, as laborers, mechanics, or material-men, or claiming to have an equity to be paid out of moneys in the hands of the receivers before payment of the bonds secured by the mortgages. By the decree it was, among other things, ordered and adjudged that certain claims of laborers and mechanics were superior liens on the mortgaged property and its proceeds, but that the claims of those who have furnished material only, but not as laborers or mechanics, although entitled to liens therefor, be postponed to the mortgages therein mentioned, " and no allowance is made, or to be paid, from the proceeds of said property, or from the money in the receivers' hands, to any other persons than to those who have such liens as aforesaid."

The city of Savannah prayed, and was allowed, an appeal — the one now before the court — from the decree denying its claim for taxes for the years 1877 and 1878.

Upon the oral argument in this court, some question arose as to whether the present appeal brings before us for review the merits of these claims for taxes. We are of opinion that this question must receive an affirmative answer. If the city had a valid claim for taxes, paramount to the lien created by the mortgages, two courses were open to it, — to postpone action under its executions until the proceedings in the Circuit Court of the United States were concluded, and its possession of the property, by receivers, had ended; or, with leave of court, to

file a petition *pro interesse suo*, submitting its claims for judicial determination. It adopted the latter course, and, in so doing, put itself in a condition to appeal from any order adverse to its interests, if such order involved an amount sufficient to give this court jurisdiction. This practice received the sanction of this court in *Wiswall* v. *Sampson*, 14 How. 52. The order dismissing the city's petition was followed by a final decree, which, in terms, limited the distribution of the proceeds of sale to certain claimants (the city not among the number), excluding all others. The orders in the court below, therefore, constituted, in every essential sense, a judicial determination adverse to the city's claims for taxes. Until those orders are reversed or modified, the city is concluded against any further assertion of its rights in the premises. Consequently, the appeal from the decree dismissing the petition and denying the claims for taxes, brings before us the question whether those claims were valid and enforceable against the property of the railroad company, or the proceeds arising from any sale thereof. That question we proceed to examine.

In conformity with an act of the legislature of Georgia, passed April 18, 1863, the Atlantic and Gulf Railroad Company was formed by the consolidation of two other companies, — one, the Savannah, Albany, and Gulf Railroad Company, incorporated Dec. 25, 1847; and the other, the Atlantic and Gulf Railroad Company, incorporated Feb. 27, 1856. The two constituent companies acquired, by their respective charters, an immunity from all taxation in excess of one-half of one per cent upon its annual net income or the annual net proceeds of its investments, — whether the one or the other is not material in the present case. This immunity passed to the consolidated company, subject, however, to the right of the State, reserved in the Code of Georgia (which was in force on and after Jan. 1, 1863), to withdraw it altogether. In *Railroad Company* v. *Georgia*, 98 U. S. 359, we held that this immunity or limited exemption was, in law, withdrawn by the State in the act of Feb. 28, 1874, entitled " An Act to amend the tax laws of the State so far as the same relate to railroad companies and to define the liabilities of said companies to taxation, and to repeal so much of the charters of such companies respectively as

may conflict with the provisions of this act." As the present case turns mainly upon the construction and effect of that act, it is necessary to examine its provisions with some care.

By the first section it is enacted that from and after the passage of the act "the presidents of all the railroad companies in this State shall be required to return on oath, annually, to the comptroller-general the value of the property of their respective companies, without deducting their indebtedness; each class or species of property to be separately named and valued, so far as the same may be practicable, to be taxed as other property of the people of the State, and that said returns shall be made under the same regulations provided by law for the returns of officers of other incorporated companies which are required by law to be made to the comptroller-general."

The second section provides that the presidents of railroad companies shall " pay to the comptroller-general the taxes assessed upon the property of said railroad companies, and on failure to make the returns required by the preceding section, or on failure to pay the taxes so assessed, the comptroller-general shall proceed to enforce the collection of the same, in the manner provided by law for the enforcement of taxes against incorporated companies hereinbefore mentioned."

The third section provides, that if any railroad company affected by the first and second sections of the act " desires to resist the collection of the tax herein provided for, said company, through its proper officer, may, after making the return required in the first section in this act, and after paying the tax levied on such corporation by the tax act for 1873, and continuing to pay the same while the question of its liability under this act is undetermined, resist the collection of the tax herein provided for by filing an affidavit of illegality to the execution or other process issued by the comptroller-general aforesaid, and stating fully and distinctly the grounds of resistance, which shall be returnable to the Superior Court of Fulton County, to be there determined as other illegalities, only the same shall have precedence of all cases in said court as to time of hearing, and with the same right of motions for new trial and writs of error as in other cases of illegality on the part of the comptroller-general and of said corporation, in

which cases the comptroller-general shall be represented by the attorney-general of the State or such other attorney as the governor may select, and if the grounds of such illegality be not sustained, the comptroller-general shall, after crediting the process aforesaid with amount paid, proceed to collect the residue due under the provisions of the act, and if at any time during the pendency of any litigation herein provided for, the said corporation shall fail to pay the tax required to be paid as a condition of hearing, then said illegality must be dismissed and no second affidavit of illegality shall be allowed. Said illegality may be amended as other affidavits of illegality, and shall always be accompanied by good bond and security for the payment of the tax *fi. fa.* issued by the comptroller-general."

The remaining section does nothing more than repeal all conflicting laws.

In *Railroad Company* v. *Georgia, supra,* the constitutional validity of that act was sustained.

The effect, then, of the act of 1874 was, that whereas, prior to its passage, the railroad company enjoyed immunity from all taxation, except at a limited rate upon its annual net income, or annual net proceeds of its investments, by that statute, each class or species of its property, without exception, was thenceforward liable, without deducting the indebtedness of the company, " to be taxed as other property of the people of the State." Now, the argument of learned counsel is that by its charter the city had "full power and authority to make such assessments and lay such taxes on the inhabitants of said city, and those who have taxable property within the same, and those who transact or offer to transact business therein, as said corporate authorities may deem expedient for the safety, benefit, convenience, and advantage of said city ;" and that " besides real and personal property, the said mayor and aldermen may tax capital invested in said city, stocks in money, corporations, choses in action, income and commissions derived from the pursuit of any profession, faculty, trade, or calling, dividends, bank, insurance, express or other agencies, and all other property or sources of profit not expressly prohibited or exempt by State law or competent authority of the United States." Code of Georgia, sect. 4847. Consequently, it is

argued, when the act of 1874 withdrew the immunity theretofore enjoyed by the company, and declared that its property should " be taxed as other property of the people of the State," such of the property of the company, within the city, as was taxable under its charter, could be thereafter reached for all purposes of municipal taxation.

This argument at first blush would seem to have some force, but we are of opinion that the opposing view is more consistent with the language of the statute of 1874, and the policy which seems to have dictated its enactment. Upon its face that act appears to establish a system of taxation by the State, for its benefit exclusively, of the property of railroad companies. The returns by the companies are required to be made to the comptroller-general, under the same regulations prescribed for returns to him by other incorporated companies. The taxes assessed are to be paid to that officer, and upon him, as representing the State, and upon no other officer, is imposed the duty of enforcing their collection. In the event of litigation he is to be represented by the attorney-general of the State, or by such other attorney as the governor may select. The statute, thus imposing, in behalf of the State, taxes to be collected by its officer, and to be paid, when collected, into its treasury, provides no machinery by means of which the property of railroad companies may be taxed by municipal corporations for local purposes. No provision is made for taxation by the municipal authorities of counties, cities, and towns, through which the road passes, of such portion of the company's property as was within their respective limits. Nor is any provision made for the transmission by the comptroller-general to such local authorities of the returns made to him by railroad companies of their property for taxation. Had the statute done nothing more, in the cases of railroad companies whose charters were subject to legislative repeal or modification, than to withdraw the immunity from taxation theretofore enjoyed by them, there would be more force in the position taken by the city of Savannah. But such is not the case; for, in the same act requiring taxation, for the benefit of the State, of all the property of railroad companies, and which, therefore, operated as a withdrawal of the then existing right of limited exemption

from taxation, the legislature makes the returns to the comptroller-general by the railroad companies of their property the only basis of the taxation to which, by its provisions, they are to be thereafter subjected. The mode prescribed by the statute for the payment of taxes by railroad companies has reference exclusively to taxes to be paid to the State, and not to municipal corporations. It seems to the court that the legislature did not intend, when imposing, as was done by the statute of 1874, taxation for the State upon all the property of railroad companies, to put upon the same property the additional burden of municipal taxation, which, had not that act been passed, would have been forbidden by the charters of those companies. The city relies upon that statute as opening the door for municipal taxation upon all the property of the railroad company which was taxable under any law of the State. But as the State simply substituted, for taxation to a limited amount, taxation for the benefit of the State upon all the property of the company according to its value, we do not think that the railroad company could be subjected to additional taxation upon the part of the city of Savannah without further legislation to that end.

Counsel have called our attention to *Bailey* v. *Magwire*, 22 Wall. 215, and insist that the principles there announced, if applied in this case, will lead to a conclusion different from that indicated. We do not so understand that case, and do not assent to any such interpretation of the decision there rendered. In that case it appeared that the Pacific Railroad Company, a Missouri corporation, was granted an exemption from taxation for a limited period. When, as well as before, that immunity was granted, the property of the company was liable for county, school, and municipal taxes, under *the public laws of the State* providing a *general scheme for the taxation of all property*. It was decided that there was nothing in the language of the statute, giving the exemption for a fixed term of years, which justified the conclusion that the State intended to relieve the property of the railroad company, after the exemption ceased, from the same liability for municipal taxes to which it was subject, by the general tax laws of the State, at the time that exemption was granted. The essential difference

between that case and this is, that the Atlantic and Gulf Railroad Company was, from its organization, exempted from *all* taxation, in excess of a limited amount, and, simultaneously with the withdrawal of that immunity, the State provided for the taxation of all of its property for the benefit of the State. Here it is not claimed that the property of the company was taxable by the city of Savannah during the period of limited exemption, withdrawn by the act of 1874, and for which exemption was substituted taxation, for the benefit of the State, of all of its property.

But it is contended that the taxes for the year 1878 stand upon a different footing from those in 1877, that is, that the city is entitled to collect the former, even if the law be otherwise as to the latter. This position rests upon that part of the Constitution of Georgia (which went into effect Dec. 21, 1877) declaring that "all laws exempting property from taxation, other than the property herein enumerated [which does not embrace the property of railroad corporations], shall be void." We are unable to perceive how, in the view expressed as to the scope and effect of the act of 1874, that constitutional provision can have any bearing upon the present case. The act of 1874, as was ruled in *Railroad Company* v. *Georgia*, took away the immunity of limited taxation previously enjoyed by the Atlantic and Gulf Railroad Company under its charter, and substituted another mode of taxation, for the benefit of the State, covering all the property of that company. The act of 1874 contained no exemption, and it was, therefore, unaffected by a constitutional provision declaring laws to be void which exempted property, other than that specially enumerated, from taxation.

For the reasons given we are of opinion that the decree below is right, and it is

*Affirmed.*

MR. JUSTICE MILLER dissenting.

I do not agree to the construction which the court places upon the act of the State of Georgia subjecting the railroad company to taxation.

When that statute says that the property of the railroad

company is " to be taxed as other property of the people of the State," I understand it to mean, that it is to be subjected to all the lawful taxes imposed by State laws under the same circumstances that the property of the citizen is.

In *Bailey* v. *Magwire*, 22 Wall. 215, a statute of Missouri, passed under similar circumstances and in language almost identical, was held to have this meaning.

That the statute of Georgia only provides *in that act* for the means of collecting the taxes due the State, affords no argument against taxation by counties and cities for local purposes, because the laws already in existence were sufficient for that purpose.