Elizabeth G. AUSTIN, Appellant,

v.

UNITED STATES of America, James E. Holshouser, United States Attorney for the Middle District of North Carolina, Appellees.

No. 8317.

United States Court of Appeals Fourth Circuit.

Argued March 27, 1961.

Decided Nov. 21, 1961.

Richard E. Thigpen, Jr., Charlotte, N. C. (Richard E. Thigpen and Robert L. Hines, Charlotte, N. C., on brief), for appellant.

James E. Holshouser, U. S. Atty., Greensboro, N. C., for appellees.

Before SOBELOFF, Chief Judge, and HAYNSWORTH and BOREMAN, Circuit Judges.

SOBELOFF, Chief Judge.

The appellant, Elizabeth G. Austin, filed a petition in the United States District Court for the Middle District of North Carolina to enjoin the United States Attorney from presenting to a federal grand jury certain evidence allegedly obtained from her in violation of her constitutional rights under the Fourth and Fifth Amendments. The petition, together with affidavits, stated that on June 5, 1958, two Internal Revenue agents appeared at the office maintained by her and her husband in which they conducted their business as insurance agents and also helped taxpayers in the preparation of income tax returns.

These men, it was said, made affirmative representations that they had come to investigate the Austins' personal income tax returns. It is further alleged that these representations were merely a "guise," intended to deceive the Austins into believing that their personal income tax returns were being investigated, but that in reality the agents were "fraudulently" endeavoring to obtain information from Mrs. Austin in order to prosecute her for aiding in the preparation of false income tax returns of *others* in violation of 26 U.S.C.A. § 7206(2). It was said that because of this deceit, the evidence given to the agents by Mrs. Austin was not voluntarily given.

Further details were set forth in the petition and affidavits with respect to the conduct of the agents and the material turned over to them. Allegedly, the agents, in a threatening manner told Mrs. Austin that she had better go to her home and get her records relating to her preparation of the tax returns of these other persons. This she did, accompanied by the Internal Revenue men, who examined the records on June 5 and 6, 1958. They also requested the appellant to furnish a list of the persons for whom she had prepared tax returns and this was later sent to them. To substantiate the charge of fraud and deceit, it is maintained in the affidavit attached to the petition, that the agents harassed the appellant's customers, told them that "Mrs. Austin is not fit to walk the streets," that "we intend to put her out of business," that "we intend to check every one of the returns Mrs. Austin prepares as long as she prepares any," and like statements.

Finally, the appellant insists that not until counsel was retained on September 1, 1959, did she have any idea that the investigation was being made of the returns prepared by her for her customers for any purpose other than to verify her own reported income from these sources. It was prayed that the United States Attorney be enjoined from presenting to a grand jury the evidence obtained in violation of her constitutional rights, both that obtained directly from her and also that obtained through the use of information so supplied by her.

The District Court held no hearing on the *facts* but, rather, heard argument from counsel as to why the relief asked for should or should not be granted. After argument, the court denied the petition and dismissed the proceeding. Apparently the District Judge was of the opinion that it would be inappropriate to suppress such evidence prior to indictment, and, if the petitioner should be entitled to any relief, it would be available at a later stage.

■ While we do not at this time, before the actual facts have been developed, definitively decide whether Mrs. Austin's allegations are sufficient to entitle her to the relief sought, to redress a deprivation of Fourth or Fifth Amendment rights, we do think that enough has been alleged to require a hearing, with findings of fact and conclusions of law. See United States v. Wolrich, 129 F.Supp. 528 (D.C.S.D.N.Y., 1955); United States v. Wheeler, 149 F.Supp. 445 (D.C.W.D. Pa., 1957), reversed on other grounds, 256 F.2d 745 (3rd Cir., 1958). Cf., Smith v. United States, 348 U.S. 147, 151, 75 S.Ct. 194, 99 L.Ed. 192 (1954); United States v. Achilli, 234 F.2d 797, 806 (7th Cir., 1956); United States v. Martin, 176 F.Supp. 409 (D.C.S.D.N.Y., 1959).

The Government, however, argues that even if Mrs. Austin has alleged facts sufficient to warrant inquiry into a possible violation of her constitutional rights, her proper remedy is to object to the admission of the challenged evidence at a trial and not to seek its suppression before indictment. Alternatively, it is asserted that even if an injunction could properly be granted before indictment, action is at this stage of the proceeding discretionary with the District Court.

There is a further point which the Government advances. It pertains to the precise constitutional right involved. Assuming that there is a remedy before

indictment for one whose rights have been violated by an illegal search and seizure in contravention of the Fourth Amendment, the Government asserts a distinction in respect to the self-incrimination provision of the Fifth Amendment. The suggestion is made that while the remedial procedure by way of injunction may be invoked for a Fourth Amendment violation in advance of an indictment, such remedy at that time does not apply to the Fifth.

While there may be language in lower court opinions lending some support to the Government's position,[1] the Supreme Court has explicitly stated that if evidence is taken by Government officials in violation of a person's Fourth or Fifth Amendment rights, he is entitled to institute proceedings in anticipation of indictment, to restrain the use of the evidence against him. Perlman v. United States, 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918), is a case in point. There the petitioner sought to enjoin the United States Attorney from using certain exhibits as a basis for an indictment against him, contending that the proposed use would violate the Fourth and Fifth Amendments to the Constitution. The Government argued in the Supreme Court, as it does here, that Perlman was raising the issue prematurely. This

contention, however, was rejected and the case was decided on the merits. The Court restated the Government's position with its reply, as follows: "In other words, that Perlman was powerless to avert the mischief of the order but must accept its incidence and seek a remedy at some other time and in some other way. We are unable to concur." 247 U.S. at page 13, 38 S.Ct. at page 419.

Another case in which it was argued that the presentation of documents to the grand jury would violate both the Fourth and Fifth Amendments, and the petitioner sought their return before indictment, was Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921). There too the Court decided the case on the constitutional issues, drawing no distinction between the standing of Fourth Amendment rights and Fifth Amendment rights, and declining to hold that the questions were prematurely raised. Also, in Cogen v. United States, 278 U.S. 221, 225, 49 S.Ct. 118, 73 L.Ed. 275 (1929), Justice Brandeis, writing for the Court, expressly recognized that an independent equity proceeding to suppress evidence taken in violation of constitutional rights could be brought before indictment, and, in such case, the decision of the District Court was a final, appealable order.[2] Other cases permitting mo-

---

1. See, where the allegations concerned Fifth Amendment rights: Centracchio v. Garrity, 198 F.2d 382 (1st Cir., 1952); Biggs v. United States, 246 F.2d 40 (6th Cir., 1957).

2. It was there said, 278 U.S. at page 225, 49 S.Ct. at page 119:
   "Motions for the return of papers and the suppression of evidence made in the cause in advance of the trial, under this rule of practice, must be differentiated from independent proceedings brought for a similar purpose. Where the proceeding is a plenary one, like the bill in equity in Dowling v. Collins, [6 Cir.], 10 F.(2d) 62, its independent character is obvious; and the appealability of the decree therein is unaffected by the fact that the purpose of the suit is solely to influence or control the trial of a pending criminal prosecution. Applications for return of papers, or other property may, however, often

be made by motion or other summary proceeding, by reason of the fact that the person in possession is an officer of the court. See United States v. Maresca [D.C.], 266 Fed. 713; United States v. Hee [D.C.], 219 Fed. 1019, 1020. Compare Weinstein v. Attorney General [2 Cir.], 271 Fed. 673. Where an application is filed in that form, its essential character and the circumstances under which it is made will determine whether it is an independent proceeding or merely a step in the trial of the criminal case. The independent character of the sumary proceedings is clear, even where the motion is filed in a criminal case, whenever the application for the papers or other property is made by a stranger to the litigation, compare Ex parte Tiffany, 252 U.S. 32 [40 S.Ct. 239, 64 L.Ed. 443]; [City of Savannah v. Jesup, 106 U.S. 563 [1 S.Ct. 512, 27 L.Ed. 276]; Gumbel v. Pitkin, 113 U.S.

tions to suppress evidence on constitutional grounds before indictment are: Go-Bart Importing Co. v. United States, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374 (1931); Foley v. United States, 64 F.2d 1 (5th Cir., 1933); Turner v. Camp, 123 F.2d 840 (5th Cir., 1941); In re Fried, 161 F.2d 453 (2nd Cir., 1947); Grant v. United States, 282 F.2d 165 (2nd Cir., 1960). The above cases conclusively demonstrate the lack of merit in the Government's argument that Mrs. Austin, assuming the truth of the allegations, may have no remedy before indictment.

■ The Government's further argument, that the suppression of evidence in advance of indictment is a matter for the District Judge's discretion, is equally untenable. None of the above cases contains the slightest suggestion that the relief is discretionary. The Government in support of this argument, relies upon cases holding that courts do not ordinarily restrain criminal prosecutions. The short answer is that this is not an action to restrain a criminal prosecution. The Eighth Circuit, in Goodman v. Lane, 48 F.2d 32, 34 (1931), exposed the fallacy of such an argument:

"[1] Appellee advances the proposition that equity has no jurisdiction to stay criminal proceedings; cites authorities to that effect; admits that there are exceptions to the general rule; but contends that the case at bar is not within the exceptions. All this may be conceded, but it is not decisive, because the present case is not one in which equity is invoked to stay criminal proceedings. The relief here asked, apart from return of the property, is that the defendant be enjoined from making use of certain evidence in any criminal proceedings against appellant. This is quite different from staying criminal proceedings. The relief

asked is somewhat broader in scope, but of the same character as that asked in the usual motion in criminal cases to suppress evidence. The jurisdiction of equity to prevent the use in evidence of property illegally seized and/or to order a return thereof is well established. * * * "

Finally, we cannot agree that there is a difference between evidence seized in violation of the Fourth Amendment and evidence obtained contrary to the self-incrimination provision of the Fifth, with respect to the right to bring a proceeding to suppress evidence prior to indictment, assuming that the allegations here really involve the Fifth Amendment rather than the Fourth. As previously pointed out, the Supreme Court cases have drawn no such distinction, but have permitted independent equity proceedings to enjoin use of evidence before a grand jury where it had allegedly been obtained in breach of both constitutional amendments. Perlman v. United States, supra; Burdeau v. McDowell, supra.

Rule 41(e) of the Federal Rules of Criminal Procedure, 18 U.S.C.A. is said to be a restatement of existing law with regard to motions to suppress evidence,[3] and if this be so, it would seem, in light of the above cited decisions of the Supreme Court, to encompass illegally obtained evidence whether the illegality involves the Fourth or the Fifth Amendment.

Moreover, the Court of Appeals for the Second Circuit has expressly, in In re Fried, 161 F.2d 453, 458–459 (2nd Cir., 1947), decided that Rule 41(e) applies to evidence taken contrary to the Fifth Amendment. Judge Learned Hand said in his concurring opinion, 161 F.2d at page 465:

"I agree that now, in spite of much professional opinion to the contrary,

545 [58 S.Ct. 616, 28 L.Ed. 1128]; or *wherever the motion is filed before there is any indictment or information against the movant,* like the motions in Perlman v. United States, 247 U.S. **7** [38 S.Ct. 417, 62 L.Ed. 950]

and Burdeau v. McDowell, 256 U.S. 465 [41 S.Ct. 574, 65 L.Ed. 1048]; * * * " (Emphasis supplied).

3. See Note to subdivision (e) of Rule 41, Federal Rules of Criminal Procedure.

it has become settled law, as my brother Frank says, not only that the victim may reclaim documents and other property seized in violation of the Fourth Amendment, but that, when these are contraband and need not be returned to him, he may in advance of trial and even of an indictment, secure from a court an order preventing their use as evidence. Although, so far as I know, the same rule has not as yet been extended to confessions procured in violation of the Fifth Amendment, I feel too much the force of consistency not to take this added step. True, judges are not to be reformers, but law which depends upon irrational distinctions is rightly discredited, for one alternative or the other is patently wrong. Since I cannot see any rational basis here for distinguishing between the two Amendments when the situation is so nearly the same, I am content to accept this innovation. * * * "

See also Grant v. United States, 282 F.2d 165 (2nd Cir., 1960).

On the other hand, if Rule 41(e), because of its language, applies only to the Fourth Amendment,[4] there is still no reason why the independent equity proceeding, recognized by the Supreme Court to exist in decisions antecedent to the promulgation of Rule 41(e), for the suppression of evidence taken in violation of the Fifth Amendment, is not still available. For, even if the rule does not in terms extend to Fifth Amendment rights, it certainly does not overrule the authoritative case law.

■ In summary, we are of the opinion that an individual claiming that evidence was taken from him in violation of either his Fourth or Fifth Amendment rights may bring a proceeding, whether it is styled a "Rule 41(e) motion," or an "independent equity proceeding," prior to indictment to have his claim adjudi-

cated. Unless his allegations clearly show that, even if true, he would be entitled to no relief, he should be given a hearing, and the court should make findings of facts and conclusions of law.

Reversed and remanded.

HAYNSWORTH, Circuit Judge (dissenting).

I think the District Judge properly deferred consideration of these questions and refused to enjoin presentation of information to the grand jury. The questions, difficult at best, will certainly arise in a much more intelligible context after the grand jury shall have acted and it has become known whether Mrs. Austin, or any of the persons for whom she prepared income tax returns, will be indicted, and, if indicted, for what offenses. In the meanwhile, an order suppressing for all purposes information in the possession of the District Attorney would seem to me to be an unwarranted extension of the principles which have been embodied in Rule 41(e) of the Federal Rules of Criminal Procedure.

It may be useful to remind ourselves that in this country it has always been recognized that a defendant at the time of a criminal trial has a right to have excluded any evidence the admission of which would be in violation of the defendant's privilege against self incrimination. At common law, he had no such right to have excluded evidence obtained as a result of an illegal search or seizure, or by any other unlawful means. It was not until 1886 that the Supreme Court held that use at a trial of evidence obtained in an unlawful search or seizure was in violation of the Fourth Amendment.[1] The Supreme Court then retreated from this new doctrine, affirmed the trial use of such evidence and limited its earlier decision in Boyd to its facts.[2] In Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, however, it approved the pretrial suppression of evi-

---

4. See footnote 1, supra.

1. Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746.

2. Adams v. People of State of New York, 192 U.S. 585, 24 S.Ct. 372, 48 L.Ed. 575.

dence obtained in an unlawful search. It explained its decision in Adams as springing from concern over the introduction of collateral issues into criminal trials. Inquiry, during the trial, into the source of otherwise competent evidence offered at the trial was thought to have been unduly disruptive of trial procedures. The considerations which lead to the decision in Adams were thus not present in Weeks.

Weeks, therefore, settled the right of pretrial suppression of evidence in aid of enforcement of Fourth Amendment rights. It had nothing to do with enforcement of Fifth Amendment rights or with pre-indictment proceedings to suppress evidence under any circumstances.

In subsequent cases [3] the Supreme Court has been concerned with a number of aspects of the problem of pretrial enforcement of possessory rights to tangible things wrongfully withheld by court or law enforcement officials, with the intention of using them as evidence. The most frequently recurring question has been the appealability of an order of a District Court adjudicating or refusing to adjudicate such possessory rights and which, when physical things were ordered returned to the claimant, suppressed their use as evidence. In general, that question is answered as in Perlman [4] by characterizing such a proceeding, if commenced before indictment, as a plenary one, so that an order fully adjudicating that claim is final and immediately appealable while, if commenced after indictment, it is so closely related to the criminal proceeding in which the tangible things are expected to be offered in evidence, that an adjudication of the claim

of possession is regarded as an interlocutory order in the criminal case, reviewable only after final judgment in the criminal prosecution.

If the return of physical property is not a purpose of the proceeding, however, the relation in time between the commencement of the proceeding and the finding of an indictment, need not be determinative of the question of appealability as the Supreme Court has intimated [5] and as this and other courts have expressly held.[6] It is difficult to understand how a proceeding commenced after arrest but before an indictment, having as its sole purpose the suppression of evidence of contraband taken from the movant, is a plenary proceeding independent of the criminal case. The fact that it is anticipatory need not conceal its substance, for it is, in every sense, an interlocutory move in the criminal case. Here, suppression is not merely incidental to the enforcement of possessory rights, it is the end itself by which the movant hopes to defeat prosecution before prosecution has formally commenced.

Moreover, when the sole purpose of the proceeding is to forestall the grand jury's attention to evidence of crime, there come into play many other considerations of importance in the enforcement of the criminal laws. There is the traditional, and essential, reluctance narrowly to circumscribe the scope of inquiry by a grand jury or to undertake to determine in advance whether particular persons lawfully might be convicted of some charge if indicted. Staying the hand of the grand jury for pre-indictment determination of the competency of a mass of information, which can be disclosed to the

3. Perlman v. United States, 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950; Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 62 L.Ed. 319, 24 A.L.R. 1426; Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048; Cogen v. United States, 278 U.S. 221, 49 S.Ct. 118, 73 L.Ed. 275; Go-Bart Co. v. United States, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374; United States v. Wallace & Tiernan Co., 336 U.S. 793, 69 S.Ct. 824, 93 L.Ed. 1042.

4. Perlman v. United States, 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950.

5. Carroll v. United States, 354 U.S. 394, 77 S.Ct. 1332, 1 L.Ed.2d 1442, 1443.

6. United States v. Williams, 4 Cir., 227 F.2d 149; Zacarias v. United States, 5 Cir., 261 F.2d 416, cert. denied 359 U.S. 935, 79 S.Ct. 650, 3 L.Ed.2d 637; United States v. Marquette, 9 Cir., 270 F. 214.

court only through extensive testimony, would be a protracted interruption of the criminal processes impairing their efficiency as well as their expedition. Considerations such as these are held to be paramount when persons fearing indictment have sought to serve Mrs. Austin's purpose through review of orders refusing to quash grand jury subpoenas *duces tecum*.[7]

When the evidence sought to be suppressed is not a tangible, physical thing at all but merely information, the proceeding lacks the historical basis and the characteristics of a plenary proceeding to repossess tangible things taken from the claimant in an unlawful search. While those cases which have held pre-indictment proceedings for the suppression of contraband for evidentiary purposes both allowable and independent of any criminal proceeding may be thought anomalous, there has been until now little dissent from the limitation that those pre-indictment claims which a District Court is required to hear and which, when heard, result in final, appealable orders, are those which arise out of the seizure of tangible property in violation of the claimant's Fourth Amendment rights. Rule 41(e) of the Federal Rules of Criminal Procedure is an expression of the prevailing rule. It does not contemplate pre-indictment proceedings to suppress the use of information, which will be excluded at the time of trial if its admission would be in violation of Fifth Amendment rights.

The Court of Appeals for the Second Circuit in In Re Fried, 2 Cir., 161 F.2d 453, undertook a limited extension of the pre-indictment suppression procedure. It ordered the suppression of a written, involuntary confession, though the proceeding was commenced prior to indictment. Judge Frank was of the opinion that a person's interest in his reputation and in not being indicted was of sufficient importance to warrant pre-indictment suppression of any evidence obtained by unlawful means. Judge Learned Hand was of the opinion that Fifth Amendment rights were of equal standing with Fourth Amendment rights, and that pre-indictment proceedings available for the protection of the one should be available for the protection of the other. He recognized, however, the countervailing considerations, the effective prosecution of crime, the orderly and prompt working of criminal procedures and the impossibility of testing in advance the competency of all evidence which an accused, or a prospective accused, thought might be offered against him. Judge Augustus Hand dissented, for he was of the opinion that there was no basis for a pre-indictment suppression of an extorted confession.

In subsequent years the limited extension of the rule represented by In re Fried has not been further expanded. The case has been criticized and some courts have found it unpersuasive.[8] I am unable to find any case in which the conclusion of In re Fried has been extended to cover the kind of situation with which we deal.

Much might be said for the reasonableness of the result of In re Fried, itself. There the thing sought to be suppressed was a written confession, a tangible piece of evidence which would be offered as such if not suppressed. There was a plain showing that the confession was extorted in violation of Fifth Amendment rights. The court in pre-indictment proceedings could discover from the confes-

---

7. Cobbledick v. United States, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783; Dugan & McNamara v. Clark, 3 Cir., 170 F.2d 118; Homan Mfg. Co. v. Russo, 7 Cir., 233 F. 2d 547.

8. Centracchio v. Garrity, 1 Cir., 198 F.2d 382, cert. denied 344 U.S. 866, 73 S.Ct. 108, 97 L.Ed. 672; Chieftain Pontiac Corp. v. Julian, 1 Cir., 209 F.2d 657; Biggs v. United States, 6 Cir., 246 F.2d 40, cert. denied 355 U.S. 922, 78 S.Ct. 364, 2 L.Ed.2d 353; Benes v. Canary, 6 Cir., 224 F.2d 470, cert. denied 350 U.S. 913, 76 S.Ct. 197, 100 L.Ed. 801; United States v. Tuzzo, D.C.N.J., 9 F.R.D. 466; United States v. Marshall, D.C.D.C., 24 F.R.D. 505; McGee v. State, 230 Ind. 423, 104 N.E.2d 726; State v. Cicenia, 6 N.J. 296, 78 A.2d 568.

sion the crime it disclosed and, in disposing of the matter, it could act with few, if any, disadvantages in comparison with a trial court at a later stage. Pre-indictment suppression of that confession was obviously advantageous to the confessor. On the other hand, the disruption of criminal procedure was but slight unless it should lead to widespread attempts to test the admissibility of confessions in advance of indictment.

Here, on the other hand, Mrs. Austin's pleadings and affidavits do not show that an outrageous violation of her constitutional rights clearly occurred. She asserts that she was led to believe that the revenue agents were seeking information in connection with possible civil adjustments of her personal income tax obligations, though she alleges they had in contemplation possible criminal charges against her in connection with her preparation of returns for others. If that allegation be accepted as true, however, it alone does not establish a violation of constitutional rights, for, as has been held by this and other courts,[9] when she gave the information to the revenue agents she must have known they were obligated to disclose to proper law enforcement officials any evidence of crime which they discovered in their investigation. Her constitutional claim is dependent upon the significance of her further allegations that she was told in a threatening manner to get and produce the information the revenue agents requested, or they would get it by other means, and that her tax return customers were harassed by statements that the agents intended to continue their investigation of Mrs. Austin and of all returns prepared by her.

It may be that these allegations in combination are enough to warrant inquiry at an appropriate time. The majority

are not prepared to say now that, taking all that she says to be true, a violation of constitutional rights clearly appears and yet it orders hearings which ought never to be held in advance of indictment unless such hearings are clearly necessary to redress constitutional rights which plainly have been invaded.

What we have here is not a thing as easily dealt with as a written confession of a relatively uncomplicated criminal act. Mrs. Austin seeks the suppression, for all purposes, of all information obtained from her books and records regarding her tax returns, and the returns of a large number of other individuals which were prepared by her, as well as all information acquired by the revenue agents through the use of such information.[10] On this record, we do not know what this information is, though we may infer it is voluminous. It does appear that Mrs. Austin fears that on the basis of the information the agents have acquired, she will be charged with the preparation of fraudulent returns for some or all of her customers. If, however, there is any information that false returns were filed on behalf of her customers, Mrs. Austin is not the sole possible, criminal defendant, for each of her customers who signed a false return may be indictable upon the basis of the same information. If the hearings ordered by the majority are held, therefore, and the District Judge should find that some violation of Mrs. Austin's constitutional rights had occurred, he would then be required to pretry substantially all the evidence which might be offered against Mrs. Austin, or against each of her customers, in any number of cases and upon charges which have not yet been brought and are now unknown.

Under these circumstances, any balancing of the interest of the law in the pro-

9. Turner v. United States, 4 Cir., 222 F. 2d 926, cert. denied 350 U.S. 831, 76 S.Ct. 65, 100 L.Ed. 742; Russo v. United States, 2 Cir., 241 F.2d 285, cert. denied 355 U.S. 816, 78 S.Ct. 18, 2 L.Ed.2d 33; United States v. Wolrich, D.C.S.D.N.Y., 119 F.Supp. 538.

10. Apparently, Mrs. Austin contends that the revenue agents identified her tax return customers only through a list which she gave to them. The suppression order she seeks would suppress all information obtained from all of her tax return customers and their books, as well as from her and her books.

tection of Mrs. Austin's shadowy claim of constitutional rights and the interest of the law in the efficiency, integrity and orderliness of its criminal procedures should find the scales greatly weighted in favor of the latter.

Many taxpayers in a position comparable to Mrs. Austin's have sought similar pre-indictment suppression of information given by them to revenue agents. With one exception, I have been unable to find any case in which they succeeded. Some of them failed because the court concluded that the information had been given voluntarily, for, despite the claimed deceit of the agents, the taxpayer must have known that inquiry by a grand jury would follow if the agents discovered evidence of crime.[11] Others of them have failed because the Treasury Department's announced policy of not prosecuting those who voluntarily disclose their tax evasions, did not make disclosures involuntary though made in reliance upon the Treasury Department's announcement, or the taxpayer failed to bring himself within the literal terms of the policy.[12] Still others have failed because, despite In re Fried, the Court was of the opinion there was no general equity jurisdiction to suppress, prior to indictment, information of this sort.[13]

Rule 41(e) is the only expressed authorization of the pre-indictment suppression of evidence. It authorizes such action when the problem arises out of the seizure of tangible things. That Rule does not authorize this proceeding to prevent witnesses from telling a grand jury what they know when their knowledge is unrelated to an unlawful seizure of a physical object. Mrs. Austin does not contend that Rule 41(e) entitles her to maintain the present action. I know of no general equity jurisdiction through which we may greatly expand the scope of that Rule.

In Rea v. United States, 350 U.S. 214, 76 S.Ct. 292, 100 L.Ed. 233, the Supreme Court held there was a general supervisory jurisdiction over the conduct of federal law enforcement agents. The exercise of that jurisdiction prior to indictment in this case is, at the least, a matter within the discretion of the District Court.[14] The Rea rule may require the exclusion at a subsequent trial of any information procured by revenue agents through conduct which violated Mrs. Austin's constitutional rights, but there

11. Biggs v. United States, 6 Cir., 246 F.2d 40, cert. denied 355 U.S. 922, 78 S.Ct. 364, 2 L.Ed.2d 353; Grant v. United States, 2 Cir., 291 F.2d 227, petition for cert. filed, 30 U.S.L.Week. 3081. (U.S. Aug. 10, 1961.) (No. 297).

12. Lapides v. United States, 2 Cir., 215 F.2d 253; White v. United States, 5 Cir., 194 F.2d 215, cert. denied 343 U.S. 930, 72 S.Ct. 760, 96 L.Ed. 1340.

13. Centracchio v. Garrity, 1 Cir., 198 F.2d 382, cert. denied 344 U.S. 866, 73 S.Ct. 108, 97 L.Ed. 672; Chieftain Pontiac Corp. v. Julian, 1 Cir., 209 F.2d 657; Biggs v. United States, 6 Cir., 246 F.2d 40, cert. denied 355 U.S. 922, 78 S.Ct. 364, 2 L.Ed.2d 353; Benes v. Canary, 6 Cir., 224 F.2d 470, cert. denied 350 U.S. 913, 76 S.Ct. 197, 100 L.Ed. 801; Eastus v. Bradshaw, 5 Cir., 94 F.2d 788, cert. denied 304 U.S. 576, 58 S.Ct. 1045, 82 L.Ed. 1539. In Hoffritz v United States, 9 Cir., 240 F.2d 109, the taxpayers won a qualified victory. The case was remanded to the District Court for a hearing, just what Mrs. Austin seeks here. The court treated the case as if it were one for the return and suppression of tangible property. The existence of a general equity jurisdiction to enjoin a federal agent from testifying before a grand jury was not discussed. See, also, that portion of the opinion in Lefkowitz v. United States Attorney for Southern Dist., 2 Cir., 52 F.2d 52, in which it was held there was no right to pre-trial suppression of the letter which the secretary, Paris, had been induced to write by the trickery of the agents.

14. United States v. Klapholz, 2 Cir., 230 F.2d 494. Even in proceedings within the contemplation of Rule 41(e), it has been held that the court has a discretionary right to postpone until the time of trial consideration of the question of suppression of evidence. Panzich v. United States, 9 Cir., 285 F. 871; United States v. Lester, D.C.S.D.N.Y., 21 F.R.D. 30; United States v. Leiser, D.C.Mass., 16 F.R.D. 199; United States v. Johnson, D.C.M.D.Pa., 76 F.Supp. 542.

is nothing in the Rea rule which requires the pre-indictment pretrial of all possible offenses which may be charged upon the basis of information the agents acquired. I think in applying the Rea rule it was not only permissible, but necessary, for the District Judge to consider, as he did, whether the tendered questions should be inquired into and resolved at this pre-indictment stage, or whether they should be reserved until, at a later stage in the proceedings they may be dealt with more intelligibly and without undue disruption of criminal processes or impairment of the independence of the grand jury. His conclusion that they should be reserved until a later stage of the proceedings was a reasonable and proper one, in no sense an abuse of discretion unless, as the majority appear to hold, the law gives him no discretion about the matter.

I would affirm.