Charles E. MIRSCHEL, Jr. and Katherine
C. Mirschel

v.

Robert C. ZAMPANO, United States At-
torney for the District of Connecticut.

Civ. No. 9121.

United States District Court
D. Connecticut.

Jan. 23, 1962.

Cooney & Scully, by John F. Scully,
Hartford, Conn., for plaintiffs.

Robert C. Zampano, U. S. Atty., New
Haven, Conn., for defendant.

BLUMENFELD, District Judge.

## I.

### Petitioners' Claim

The petitioners claim that their re-
tained copies of federal income tax re-
turns for the years 1955, 1956, 1957 and
1958, books and records, ledger sheets,
cancelled checks, etc. for those years
were obtained by Internal Revenue Agent
Rehm and Special Agent Harman of the
Intelligence Division of the Internal
Revenue Bureau and that a Question and
Answer (Q & A) statement of Charles
E. Mirschel, Jr., by Special Agent Har-
man which was taken down by a ste-
nographer and later transcribed were all
obtained from the petitioners by unrea-
sonable search and seizure and compul-
sory self-incrimination in violation of
their constitutional rights under the
Fourth and Fifth Amendments.

## II.

### Availability of a Remedy

Whether this proceeding instituted by
the plaintiffs in their effort to preclude
the defendant, the United States Attor-
ney, from presenting that evidence to a
Grand Jury in connection with possible
future criminal proceedings against them
is considered under their alternative re-
quest, either as an action for an injunc-
tion against the use of such evidence
or for its suppression under 41(e) of the
Federal Rules of Criminal Procedure, 18
U.S.C.A., matters little except for the

fact that part of the evidence which is the subject matter here is a Q & A statement which a Rule 41(e) motion would not reach. In United States v. Murray (2 Cir. 1962), 297 F.2d 812, docket #26741, decided January 10, 1962, the court held that a Q & A statement was not discoverable by a defendant in a criminal proceeding under Rule 16[1] because such a statement cannot be regarded as a tangible object "belonging" to him. No differences in the characteristics of a Q & A statement as property, defined in 41(g)[2] and "seized" under 41(e),[3] or as property "belonging" under Rule 16 are sufficiently discernible to merit any distinction in the application of Rule 16 at one stage of criminal proceedings and Rule 41(e) at an earlier stage.

■ Since the scope of the plaintiffs' remedy would be enlarged under their claim for an injunction without subjecting them to any increased burden in the quality or quantity of proof, the court, by agreement of the parties, has considered the affidavits accompanying the petition and the other evidence as having been presented at a final hearing upon their claim for an injunction. That injunctive relief is appropriate upon a proper showing of facts is not open to question. Perlman v. United States, 247 U.S. 7, 38 S.Ct. 416, 62 L.Ed. 950 (1918); Cf. In re Fried (2 Cir. 1947), 161 F.2d 453, 458–459; Austin v. United States (4 Cir. 1961), 297 F.2d 356, No. 8317, decided November 21, 1961; Grant v. United States (2 Cir. 1961), 291 F.2d 227.

### III.

### Facts

The investigation and audit of the plaintiffs' 1958 joint income tax return began when it was taken from a group of returns selected as excess cases for assignment to new agents to develop their experience. It was assigned to Robert Rehm, a newly appointed Revenue

---

1. Rule 16, Federal Rules of Criminal Procedure—"Discovery and Inspection—Upon motion of a defendant at any time after the filing of the indictment or information, the court may order the attorney for the government to permit the defendant to inspect and copy or photograph designated books, papers, documents or tangible objects, obtained from or belonging to the defendant or obtained from others by seizure or by process, upon a showing that the items sought may be material to the preparation of his defense and that the request is reasonable. The order shall specify the time, place and manner of making the inspection and of taking the copies or photographs and may prescribe such terms and conditions as are just."

2. Rule 41(g), Federal Rules of Criminal Procedure—"Scope and Definition. This rule does not modify any act, inconsistent with it, regulating search, seizure and the issuance and execution of search warrants in circumstances for which special provision is made. The term 'property' is used in this rule to include documents, books, papers and any other tangible objects. As amended Dec. 27, 1948, eff. Oct. 20, 1949; Apr. 9, 1956, eff. July 8, 1956."

3. Rule 41(e), Federal Rules of Criminal Procedure—"Motion for Return of Property and to Suppress Evidence. A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property and to suppress for the use as evidence anything so obtained on the ground that (1) the property was illegally seized without warrant, or (2) the warrant is insufficient on its face, or (3) the property seized is not that described in the warrant, or (4) there was not probable cause for believing the existence of the grounds on which the warrant was issued, or (5) the warrant was illegally executed. The judge shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted the property shall be restored unless otherwise subject to lawful detention and it shall not be admissible in evidence at any hearing or trial. The motion to suppress evidence may also be made in the district where the trial is to be had. The motion shall be made before trial or hearing unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion, but the court in its discretion may entertain the motion at the trial or hearing."

Agent, who had only recently completed a departmental six month instruction course and was still classified as a trainee. He made an appointment by telephone conversation with the wife to see the plaintiffs concerning their 1958 tax return. When he arrived at the plaintiffs' store on January 22, 1960, he met Mr. Mirschel and told him his tax return had been assigned to him for examination and that he would like to look at the books and records used in preparing their tax return in order to determine the correct tax liability. Rehm had no thought at all that his investigation would involve any criminal liability. He showed his commission to Mirschel. The taxpayer suggested that they work at his home and he took the agent there and made all the books and records available to him. After examining these records, the agent told Mirschel that there were several discrepancies which Mirschel said he could not explain since he had not prepared the return.

Thereafter, another appointment for February 10, 1960 was arranged by telephone for Special Agent Harman of the Intelligence Division, who entered the case because of something Rehm had informed him about. Both agents went to the plaintiffs' home where Harman was introduced to Mirschel as a Special Agent, Intelligence Division of Internal Revenue Service. Harman displayed his pocket commission identifying him to Mirschel and stated to him that he had entered the case because of differences found by Rehm and that he was in the case to determine whether the error was due to fraud. In explaining his position to Mirschel, Harman used a departmental questionnare form, each question being filled out as he went along. Harman asked Mirschel for permission to ask questions and made known to him that Mirschel was not required to answer and that anything he said might be used against him. Mirschel said he wanted to cooperate and he did cooperate. Harman told Mirschel he wanted to see the plaintiffs' copies of their tax returns for the years 1956 through 1959; that there

might be fraud; and that he wanted to go through those and the books and records for those years. He stated to Mirschel that this would have to be voluntary on his part. Mirschel had his books and records for 1958 available on that day. He said Harman could come back and see the other records. Two days later he had those records dealing with the other years packed up and ready for Harman when he called for them. They were turned over to Harman voluntarily and Harman typed up a receipt for them on the plaintiffs' typewriter and signed it for the plaintiff. Later Mirschel furnished other records to Harman upon request, sending some of those to him by mail.

Subsequently, from time to time, Harman got in touch with Mirschel at his store or by telephone to ask for additional information which Mirschel gave to him. On June 7, 1960 Harman spoke to Mirschel on the telephone and told him he would like to have him come to the Internal Revenue Office for the purpose of taking his statement. Mirschel said he would come in the next day. On June 8, 1960 Mirschel's appearance was voluntary. Mirschel stated that he understood he did not have to make any statement which might incriminate him. He answered Harman's questions voluntarily in the presence of a stenographer who made notes of the questions and answers. At no time was Mirschel warned that criminal proceedings might be taken against him, nor did the agents inform him that he was entitled to be represented by counsel. After the close of the Q's & A's, Harman told Mirschel that he was going to write a report recommending criminal prosecution and told him of the further administrative processes this would go through and of the opportunities open to Mirschel at these later stages.

Shortly thereafter, Mirschel retained a lawyer who wrote to the Director requesting that the books and records be returned and for a copy of all statements and of the Q & A interrogation made under oath by Mirschel to the In-

ternal Revenue Service. When this letter reached Harman, he called Mirschel's attorney and hold him the records would be returned in a few days. He refused to send a copy of the Q's & A's to the attorney stating that department policy did not permit this since the attorney had not been present at the time it was taken, but informed him that Mirschel could see it and make any corrections in it or refuse to sign it on any ground.

The attorney then charged that Mirschel was being deprived of the right to counsel. Harman explained that if the attorney came with the taxpayer and the taxpayer signed he could have a copy and that he could come with him and they could go over it together, but in the heat of the conversation apparently this was not fully understood by the attorney.

## IV.

### Conclusions and Opinion

■ At the outset, this was a civil audit, pure and simple. It is clear that all of the material which is the subject matter of this proceeding was voluntarily turned over to the Revenue agents. Indeed, the petitioners do not claim otherwise. Nothing received from the taxpayers was obtained by deception or fraud. The taxpayers were asked to cooperate and they did cooperate. They were interviewed and oral statements were made by them. There is no evidence and no claim that this was not willingly done. They were at all times free to obtain the advice of counsel.

The gravamen of the petitioners' claim is that they were not told they were to be charged with a crime or that the investigation was for the purpose of attempting to secure evidence to convict them of crime.

The Special Agent did inform the taxpayers that he intended to check the books and records to determine whether fraud existed. They took the position at that time that the returns had been prepared by someone else and that they were unfamiliar with the long form of return, never having prepared one. Although it has recently been suggested that, "It would of course be far preferable, so that it may be made certain that the choice of the taxpayer be an informed choice, that written warning be given when the civil audit is suspended as such, and the investigation becomes one to determine whether criminal or civil fraud penalties should be sought by the government. This would not only protect the taxpayer's constitutional rights, but also obviate much of the delay in tax cases caused by such motions [petitions] as the one before us." Smith, Circuit Judge, Grant et al. v. United States (2 Cir. 1961), 291 F.2d 227, 228, there is no present requirement that such a warning flag be hoisted. It has recently been made clear that there is no " * * * requirement of warning of possible prosecution on a request by criminal investigators for information prior to appearance before a committing magistrate, so long as no coercion is claimed." Grant et al. v. United States, supra. There is no basis for vitiating the voluntary cooperation of the plaintiffs.

The collateral claim that the voluntariness of the plaintiffs' Q & A statement is nevertheless tainted by illegality because the plaintiffs were not informed of their right to seek advice of counsel is also inapplicable here. The investigation was not one conducted under § 6 of the Administrative Procedure Act (5 U.S. C.A. § 1005(a)) which "applies only to persons 'compelled to submit data or evidence'," nor was Mirschel's appearance in response to a summons issued under § 7602 of the I.R.C. of 1954. As in United States v. Murray, supra, this case also is distinguishable from Backer v. Commissioner (5 Cir. 1960), 275 F.2d 141, and United States v. Smith (D.C. Conn.1949), 87 F.Supp. 293. There is no requirement that the plaintiffs should be informed of their right to have the advice of counsel.

No search has been established.

No compulsion was imposed or threatened.

This memorandum of decision will constitute the court's finding of facts and conclusions of law in accordance with Rule 52(a), F.R.Civ.P., 28 U.S.C.A.

The plaintiffs' motion is denied.

The plaintiffs are not entitled to an injunction against the defendant.

Judgment may be entered for the defendant to recover his costs.

It is so ordered.